WILLIAM P. WOOD, App't. vs. R. I. HOSPITAL TRUST CO.,
Admr.

PROVIDENCE—JUNE 2, 1905.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1)   *New Trials.   Transcript of Evidence.*

A transcript of evidence approved and allowed by the justice presiding at the trial of a cause is, upon petition for new trial, *prima facie* a complete record of all the evidence if the grounds set out in the petition for new trial involve a consideration of all the evidence.   If the opposing party contends that the record presented is deficient or incorrect, he must present and support his corrections by affidavit.

(2)   *New Trials.   Transcript of Evidence.*

Where a party upon petition for new trial intends to confine himself to a particular issue, a transcript of the evidence affecting such issue is sufficient.

(3)   *Wills.   Signature to Will by Testator.*

Where a testator is so weak, physically, that he is unable to guide the motion of a pen which he holds, his hand may be guided by another person.   In such case this is a signing by the testator himself.   The act is his own with she assistance of another, and not the act of another under authority from him.

PROBATE APPEAL.   Heard on petition of appellant for new trial, and denied.

DUBOIS, J.   After a verdict for the appellee, sustaining the will of Marcus M. Wood, deceased, the appellant has brought his petition for a new trial, based upon several grounds, all but one of which he waives, and now relies solely upon the claim "that the evidence showed that the instrument purporting to be the last will and testament of Marcus M. Wood was not executed in accordance with the laws of the State of Rhode Island."

Within the time required by Gen. Laws cap. 251, § 6, the appellant filed in the Common Pleas Division of the Supreme Court "a true copy of the testimony of Joshua H. Steere and Michael Sweeney, given at the trial of the above entitled case," duly "approved and allowed" by the justice who presided at the trial.

The appellee objects to the statement of the evidence filed, as being but a portion of the testimony introduced at the trial, and only that of the subscribing witnesses to the will, and because no statement of the rulings of the court in connection therewith has been filed according to the provisions of the General Laws aforesaid, and therefore moves that the appellant's petition for new trial be dismissed.

(1) A transcript of evidence duly "approved and allowed" by the justice who presided at the trial of the case is *prima facie* a complete record of all the evidence if the grounds set out in the petition for a new trial involve a consideration of all the evidence. If the opposing party conceives that the record presented is deficient or incorrect, he must present and support his corrections by affidavit.

(2) An examination of the transcript of the evidence has convinced us that no one, living at the time of the trial, other than the said subscribing witnesses to the will, knew anything about, or could testify concerning, the testator's execution of the will, and therefore that there was no necessity for filing a transcript of other testimony in the case, if there was any, so long as the appellant intended to confine himself to this issue; he should, however, have stricken from his petition for a new trial the other ground, to wit, that the verdict is against the evidence, which requires a consideration of the whole evidence and a presentation of the whole record to the reviewing court.

The petition for a new trial does not appear to be founded upon rulings or upon evidence and rulings, for no rulings or exceptions to the same are apparent upon the record; but, on the contrary, the petition is founded upon the claim that the verdict is against the evidence of the subscribing witnesses concerning the execution of the will by the testator. The objections are insufficient causes for the dismissal of the appellant's petition for a new trial, and the appellee's motion therefore must be denied.

The transcript of the evidence discloses the following facts: That the testator and the subscribing witnesses had been acquainted with each other for a period of from fifteen to thirty-five years and that within that time Mr. Sweeney had

seen him "generally once a day for perhaps fifteen or twenty years, very often twice every day;" that the witnesses had been requested to come to the house of the testator for the purpose of being witnesses to his last will; that they arrived about three o'clock in the afternoon and found Mr. Wood in bed, very weak, and, according to Mr. Sweeney, "drawing very close to his last account;" that he did not speak while they were there, but that he appeared to recognize them by the look and expression of his face; that he acknowledged the instrument to be his last will and testament by a nod when Mr. Rollin Mathewson, an attorney and counsellor at law of this court, since deceased, made the inquiry of him; that when the lawyer asked him whether he would sign it in bed or at the bureau, he tried to get up to go to the bureau, but was too weak to do it alone and unaided; that Mr. Steere and Mr. Sweeney raised him up and assisted him to the bureau and supported and held him up while there; that while there Mr. Mathewson asked him "if that was his last will and testament, and he nodded his head as much as to say it was;" that he tried to sign the will with a pen, but could not do it, and Mr. Mathewson said that would not do and guided his wrist, according to one witness, and according to the other, "took the pen from Mr. Wood's hand and wrote his name and asked Mr. Wood to assist him catch the pen;" that the witnesses laid him back on the bed and signed the will in his presence; that Mr. Mathewson asked him about another will, if he should destroy it, and that Mr. Wood nodded his head and Mr. Mathewson said he would, and that the witnesses then went away.

The law governing the execution of wills is contained in General Laws, chapter 203, section 13, as follows: "No will shall be valid, except as provided in sections twenty and thirty-six of this chapter, unless it shall be in writing and executed in manner hereinafter prescribed; that is to say, it shall be signed by the testator, or by some other person for him in his presence and by his express direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the tes-

tator, but no form of attestation shall be necessary, and no other publication shall be necessary."

The appellant calls special attention to the following testimony in regard to the signing of the will—that of Joshua H. Steere: "Q. 73. Mr. Mathewson took hold of Mr. Wood's hand and moved it to write the name? You say Mr. Mathewson said, 'That won't do?' A. Yes, 'that won't do, that won't·do.' Q. 74. And then he took hold of Mr. Wood's hand and moved the hand to make the signature? A. Yes." And also that of Michael Sweeney: "Q. 44. I had got you down to that time when Mr. Mathewson asked a question, now what did Mr. Mathewson do? A. Mr. Mathewson signed Mr. Wood's name to the paper. Q. 45. Who held the pen, Mr. Mathewson or Mr. Wood? A. I think it was Mr. Mathewson;" and recalls the fact that Mr. Sweeney also testified when Mr. Mathewson stopped the testator Wood and said that would not do, he asked him if he wanted him to sign for him, but he did not hear him make any answer or see him make any nod or movement; and argues therefrom that as our statute expressly requires that a will to be valid must be signed in one of two ways—(1st) by the testator, or (2nd) by some other person for him, in his presence and by his express direction—"the testimony of the two witnesses is that the testator did not sign the will, which leaves only the question as to whether Mr. Mathewson signed by the testator's express direction."

(3)   We can not assent to such a conclusion. The testimony of the witnesses is that the hand of the testator was guided while he signed his name. It was his will that directed the pen, although his weak nerves and muscles, unaided, could not have carried his intention into execution. "It not unfrequently happens that the testator's hand is guided by some other person when he signs his name or makes his mark. In such case this is a signing by the testator himself, and not by the person who guides his hand. So where the testator holds the pen while the other person really writes the name or makes the mark, it is a signature by the testator. Even where the testator is so weak as to be unable to write his name and another person guides his hand so as to form the letters of testator's

name it is held to be a valid signature by testator if he touches the pen while his name is thus written." Page on Wills, section 180, and cases cited.

"The statute of frauds permits the signature of the testator to be affixed to the will by another person for him at his request. *A fortiori*, if the testator is so weak, by reason of physical exhaustion or the ravages of disease, that he is absolutely unable to guide the motion of the pen which he holds in his hand, and is physically unable to shape the words and letters composing his name, his hand may be guided by another person. It need not be shown that the testator had in words expressly requested the assistance involved in the guidance thus given, if it satisfactorily appear that he was conscious during the act of signing and while his hand was guided; for his submission and acquiescence in the actions of the person will be equivalent to a direction that his name shall be written for him. The direction to another to sign for the testator may be given by signs as well as by spoken language." Underhill on Wills, § 188, and cases cited.

It was held in *Stevens* v. *Vancleve,* 4 Wash. C. C. 269, that where the hand of the testator was guided by another person with his own consent, the signature was that of the testator.

In *Vandruff* v. *Rinehart,* 29 Penn. St. 232, the testator was so badly affected with palsy he could not hold the pen to write his name. He attempted to make his mark, but was unable to do so without assistance, and a bystander steadied his hand while he made his mark. The court said: "If one having testamentary capacity, is unable from palsy or other cause, to steady his hand so as to make to his will the signature required by law, another person may hold his hand, and aid him in so doing; and it is not necessary to prove any express request from the testator for such assistance. The act is his own, with the assistance of another, and not the act of another under authority from him."

So also in *Vines* v. *Clingfost, Ex'r.,* 21 Ark. 309, it was held to be clear that the testator's intention was to sign the will prepared for him, but, being unable to do so from weakness, he was assisted by another, who appeared to have acted in good

faith, and merely aided the testator to do what he manifestly desired to do—to sign the will,—and that in these circumstances the signature was, in legal effect, the act of the testator, and not the act of Cobb by his request.

*In re Allen's Will,* 25 Minn. p. 41, it was held that the fact that the brother of the testator assisted him in holding the pen while he was affixing his signature, because of his physical weakness, made it none the less his individual, conscious, and voluntary act.

The cases relied upon by the appellant support his claim that where the testator does not sign his name and the signature is made for him by another person, express authority for such signing must be proved. But that is not this case. The testator, Marcus M. Wood, appears to have made every effort in his power to sign his will; instead of signing the same in bed, which would have been much less tiresome for him in his debilitated condition, he made an effort to rise to go to the bureau where he might stand while signing. Everything is indicative of mental strength striving against physical weakness *in extremis.* The verdict of the jury sustaining the will is justified by the evidence, and the appellant's petition for a new trial is denied.

Decree will be entered accordingly.

*Clarence A. Aldrich and John Henshaw,* for appellant.
*Charles A. Wilson and Alfred S. Johnson,* for appellee.