GRAVES *v.* BOWLES.

4-3764

Opinion delivered March 11, 1935.

*George Vaughan* and *O. E. Williams,* for appellant.

BAKER, J. This appeal is from a judgment of the Madison Circuit Court, wherein the appellee filed certain claims against the estate of Josephine Dickson, deceased. W. J. Bowles, the appellee, and his sister, Josephine Dickson, lived together near Boston, in Madison County, upon a small farm. There was a small amount of personal property. It is said that the principal asset of the estate was a restricted or frozen deposit of $2,400 belonging to Josephine Dickson, in the Custer City Bank, Custer City, South Dakota. Shortly after the death of Mrs. Dickson, an alleged will was offered for probate and, except for a bequest in the sum of $1,000 to Pearl D. Graves, a daughter of Josephine Dickson, the remaining property was bequeathed to the appellee. The probate of the will was contested by Mrs. Graves, and upon this contest an order refusing probate thereof was granted. Shortly thereafter the appellee filed a claim against the estate in the sum of $5,475, claiming compensation for nursing and taking care of his sister for a period of ten years prior to her death. He abandoned this claim and filed another for $3,900, for taking care of her for three years, next prior to her death. His last claim was made upon a basis of $25 per week. The court allowed the appellee the sum of $1 per day for three years, or $1,095. The appellee also filed claim for $25, paid on a doctor's bill, and $100, which he claimed to have paid an undertaker. All of these claims were disallowed by the administrator, but allowed by the court. Upon appeal the circuit court allowed the claims as they had been allowed in the probate court.

A considerable record is made up here in showing the proceedings in regard to the will, and the fees charged by some of the attorneys, some of whom are said to have changed sides during the progress of the litigation. These matters furnish us no aid in the decision of the case. It will be sufficient to say that, after the alleged will of Josephine Dickson was held invalid, Bowles, who had been appointed the executor, was removed from that position and Virgil Weathers, sheriff of Madison County, was appointed administrator and made bond.

It appears that, as to the claims of W. J. Bowles, the probate court on January 15 heard evidence and made the allowance and classification. Mrs. Pearl D. Graves made herself a party to the suit, filed the affidavit, made prayer for appeal, and an order was made allowing the appeal, and on the 15th day of May, 1934, the cause was tried in the circuit court, and the court held that there was an implied contract to pay the claimant, W. J. Bowles, a reasonable amount for his services. This finding and judgment of the court is challenged here as not being supported by the law and the evidence. There is no real dispute in the relevant testimony. Bowles himself testified that, while he and his sister were living together, they were "halvers," each one paying one-half of the expenses. There is considerable proof that Bowles was attentive toward his sister, rendering to her such services as he could for a long period during which she was practically helpless. There is no proof, however, to the effect that the relation of employer or employee existed as between them. Mrs. Dickson sometimes remarked to friends that she could never repay her brother for his kindnesses. There is no substantial proof indicating that she intended to repay it, unless it is indicated by the alleged will which was refused probate. Bowles was permitted to testify, and much of his testimony is incompetent, but the most that he was willing to say was that he expected to be paid. It is also in evidence that upon the trial in the probate court, wherein the probate judge disregarded most of the rules of evidence and permitted all witnesses to testify to any matter that might be deemed at all relevant to the issues, including the appellee, the appellee testified that, since he could not get the property under the will, he had decided to get it by filing claims against the estate. He testified in the trial of this cause that he did not expect to be paid until after the death of his sister.

We deem it unnecessary and inexpedient to set forth any substantial portion of this volume of evidence and argue the questions of fact as substantiating the opinion we here express. The only law involved in the case arises out of two propositions. The first is the presumption

of law as to services rendered by one member of a family to another, and the second is the right of a claimant to testify against the administrator as to transactions with the deceased.

"The presumption is that services rendered by members of the same family, and especially between father and son, are gratuitous. Such services are enjoined by the reciprocal duties of the family relation, and are always presumed to have been prompted by natural love, rather than by the promise or the hope of pecuniary reward. Courts are reluctant to infer a pecuniary recompense from the performance of filial or parental duties such as humanity enjoins. Hence the burden is upon him who claims a money recompense for personal services performed, whether voluntarily, or upon the request of the other, to establish a contract, expressed or implied, for such consideration." *Lineback* v. *Smith,* 140 Ark. 500, 504, 215 S. W. 662.

Citing from the same case, this court further said on page 505: "Expressions of preference for the appellee on the part of his mother after the death of her husband, to the effect that if he would come and live with her he should not lose anything, and that she expected him to get what she had at her death, would not raise an implied contract to remunerate him for the services which might well be attributed to the affection and loyalty of a dutiful son to his mother."

We are not unaware of that class of cases wherein services may have been rendered under such extraordinary circumstances and conditions that a jury would be warranted in finding therefrom an implied contract to pay for such services.

So in this case the court, sitting as a jury, would have under such circumstances and conditions an equal right to determine that question of fact, whether a contract might be implied.

The appellee testified in this case. He was not called by the adverse party, and much of his testimony was incompetent, and we feel impelled to say that the court in permitting this testimony to be introduced, suffered himself to be influenced thereby. This testimony, as to trans-

actions with the deceased, is violative of § 4144, Crawford & Moses' Digest, and the cases there cited.

While the burden of proof is upon the claimant to show such facts as would justify the court in implying that there was a contract to be performed, he cannot do so by his own testimony when it violates the above-mentioned statute. *Williams* v. *Walden,* 82 Ark. 136, 100 S. W. 898; *Blackburn* v. *Thompson,* 26 Ark. 438, 447; *Nissen* v. *Flournoy,* 160 Ark. 311, 354 S. W. 540.

Further statements of fact or discussion of the law applicable thereto are unnecessary as the principles ruling this case are well settled by numerous decisions, some of which are cited herein.

From the undisputed testimony in this case and from the facts disclosed by this record, we think the court erred in allowing these claims; that there is no basis of fact legally established upon which the appellee had a right to recover.

The judgment is therefore reversed, and the cause dismissed.