GRAVES v. BOWLES.

4-4504

Opinion delivered February 1, 1937.

*George Vaughan* and *O. E. Williams*, for appellant.

HUMPHREYS, J. The appellee offered a will for probate, purporting to be the last will and testament of Josephine B. Dickson, deceased, in the probate court of Madison county, Arkansas.

Pearl D. Graves, the daughter and only heir-at-law of Josephine Dickson, deceased, contested the validity of and the right to probate same.

The cause was submitted to the probate court upon the contesting petition and the response thereto and the testimony adduced by the respective parties, resulting in a judgment that the will was invalid, and the rejection of same for probate.

An appeal was duly prosecuted from the judgment of the probate to the circuit court of said county on December 13, 1933.

In due course, the cause might have been tried at the March term, 1934, of the circuit court, but after the appeal was perfected an administrator of the estate of Josephine Dixon, deceased, was appointed by the probate court and the court proceeded to administer the estate as if deceased had died intestate. The appellee, the proponent of the will, acquiesced in the latter proceeding by filing a claim against the estate for services rendered to deceased during the last three years of her life in a sum sufficient to absorb the entire assets of the estate.

On appeal to the Supreme Court, his claim was disallowed as will be seen by reference to the case of *Graves* v. *Bowles,* 190 Ark. 579, 79 S. W. (2d) 995. The opinion in this case was handed down the eleventh day of March, 1935. During the pendency of the appeal to the supreme court Bowles had secured a judgment in the probate court finding and adjudging that he was entitled to the sum of $2,400 evidenced by a certificate of deposit issued by the Custer City Bank of Custer City, South Dakota, to the deceased during her lifetime, but this judgment was canceled by the court in a certiorari proceeding. The certiorari proceeding in the circuit court was docketed as No. 11. The case in the law contest and the claim Bowles filed against the estate were docketed in the circuit court as No. 16. Case No. 16 was tried in the circuit court, the evidence being directed to the validity of the claim, rather than to the validity of the will, and in the Supreme Court the opinion dealt with the validity of the claim only.

After the adverse decision in the Supreme Court, Bowles demanded a trial on his appeal in the will contest which appeal then appeared on the docket as No. 18.

Appellant protested against the trial on the ground that appellee had resorted to inconsistent remedies and, by virtue of election between inconsistent remedies, had abandoned his right to rely on the will and pleaded *res adjudicata* and denied that the will was executed in accordance with the statutes or that it was the will and testament of deceased or that same was entitled to probate.

On the trial of the cause the court excluded all evidence offered by appellant tending to show an election of remedies by appellee and abandonment of the will contest, and in support of appellant's plea of *res adjudicata,* over appellant's several and separate exceptions.

The court then found and adjudged that the will was properly executed on the 8th day of July, 1933. That Josephine B. Dickson was an adult of sound mind and resided in Madison county, Arkansas, on August 12, 1933, and that the will was written in the presence and by the request of said testatrix, signed by her as her last will and testament, and in the presence of said witnesses and duly signed by the witnesses in her presence and in the presence of each other. That same was executed with all formalities and solemnity and circumstances required by law, etc., and that said will should be probated and letters testamentary issued thereon.

From this judgment an appeal has been duly prosecuted to this court.

The will was written by S. U. Cowan, a justice of the peace. Josephine B. Dickson signed same by mark being too nervous to sign her own name. The purported will was signed by the justice of the peace for her in the presence of two witnesses who afterwards signed their names as witnesses in a separate room or hall to that in which Mrs. Dickson occupied on a sick bed, which adjoined the room where the justice of the peace signed the will by mark for her. She was being held up in the bed when she touched the pen in the hand of the justice of the peace. There was an opening in which curtains

hung between the two rooms, or the room and hall. The curtains were drawn back. The witnesses signed the will on a small table in the hall or adjoining room. The witnesses who signed the will were Roy D. Ogden and Tom Hunter and they were told to sign it by the justice of the peace who went into the adjoining room or hall with them.

The justice of the peace testified that these witnesses signed the will in the presence of each other "and could have been in the presence of her, in a way."

Roy Ogden testified, "I don't know whether Mrs. Dickson saw me sign the will or not, her head was turned toward me. I don't know that Mrs. Dickson saw us when we signed the will."

Tom Hunter testified, "She didn't tell me to sign the will, but the justice of the peace did. I don't know whether she saw me sign the will or not. Mr. Bowles asked me to sign the will. He was in the room at the time close to the bed. We were not in the same room Mrs. Dickson was in when we signed the will."

The witnesses did not sign the will at the testatrix's request. The undisputed testimony shows that they signed it at the request of the justice of the peace and at a time when they were not in the presence of the testatrix.

The statute requires that a will must be signed by two witnesses at the request of the testator. Subdivision 4 of § 10494, Crawford & Moses' Digest.

The undisputed evidence shows that the justice of the peace who signed the name of the testatrix by mark did not write his own name as a witness to the will. Section 10495 of Crawford & Moses' Digest requires that he do so.

These statutes are mandatory and must be complied with in order to give validity to the will and entitle it to probate.

On account of the error indicated the judgment of the circuit court is reversed, and the case is remanded with directions to affirm the judgment of the probate court holding that the will was invalid, and not entitled to probate.