EVANS *v.* EVANS.

4-4522

Opinion delivered February 8, 1937.

*Tom W. Campbell* and *Coulter & Coulter,* for appellants.

*Walter L. Brown,* for appellee.

MEHAFFY, J.  J. H. Evans, on December 22, 1923, made a will which was signed by J. A. Stephens and Bob Brown, witnesses.  After J. H. Evans' death the will was filed for probate on December 8, 1934.

On December 10, 1934, the witnesses Stephens and Brown, appeared before the clerk of the county and probate courts of Union county, and made proof of the will. On December 27, 1934, W. F. Evans, Lizzie Evans and Robert S. Evans filed in the probate court of Union county, exceptions and protest.  Several grounds for contest were contained in the pleading filed.  A response was filed by the contestees on January 29, 1935.  On that date the probate court heard the evidence and admitted the will to probate.  The contestants prosecuted an appeal to the circuit court, and the case was tried there on March 6, 1936.

The jury returned a verdict in favor of the contestees, finding that the will was valid, judgment was entered accordingly, and to reverse that judgment this appeal is prosecuted.

All grounds for contest have been abandoned except the allegation that the will was void because not executed in accordance with the statutes.  Therefore, the only question for our consideration is whether the will was executed as required by law.

Section 10494 provides the manner in which wills may be executed: first, the will must be subscribed by the testator at the end of the will, or by some person for him at his request; second, such subscription should be made by the testator in the presence of each of the attesting witnesses or shall be acknowledged by him to

have been so made to each of the attesting witnesses; third, the testator at the time of making such subscription or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament; fourth, there shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator.

J. A. Stephens, one of the attesting witnesses, testified in substance that he lived at Quinn, where the testator lived; knew J. H. Evans something like 20 or 25 years; Evans farmed and operated a store; witness was at Evans' store on December 22, 1923, and Mr. Evans called witness and Bob Brown and asked them to witness the signing of a will; witness saw Evans sign it. One of the witnesses' signatures is Stephens' and the other is Bob Brown's. All three were together and witness saw Bob Brown sign the will. Mr. Evans signed first, stated that it was his will, and asked witness to attest it. Evans' name is signed in green ink, and witness' and Brown's in black ink; there was a post office in connection with the store, and the ink Mr. Evans was using was ink that was used in the post office, and the other was signed by witness and Brown with witness' fountain pen. Witness, after Evans had signed, signed his name at the request of Evans, and handed his pen to Mr. Brown, who then signed; they were about two and a half feet apart; witness was requested by Evans to sign, and he understood he was witnessing Evans' will; has not discussed the execution of the will with any one since the trial in the probate court, but has thought about the matter considerably. Mr. Evans called witness and Bob Brown, and asked them to witness the signing of a will. The will was then presented to witness and he stated that it was signed by Evans; that he saw him sign it, and that witness' signature is there, where he signed it; and he saw witness Bob Brown sign it; they were all there together and Evans signed first, and he said it was his will. Witness and Bob Brown both saw Evans sign the will; they were all within a few feet of each other, and Evans signed in the presence of the witnesses, and when witness signed he then saw Bob Brown sign it.

Bob Brown testified in substance as follows: He had known Evans for 20 years, and Evans was in the mercantile business and farming; he does not remember the date that the will was signed; Evans asked witness to witness his will; asked him to sign it; Stephens and witness were present, and Evans said: "I want you boys to sign the will with me." They went inside the store, around where the little post office department was, and signed it; there were just the three of them; witness first testified that he thought he signed first, but then said he was mistaken, that he did not sign on the top line, but he signed and handed the pen to Stephens, but did not know whether Stephens signed it or not; did not see Evans sign, and does not know his signature; did not know whether his signature was there or not. Witness said he and Stephens signed the will with Evans. When witness signed the will they were all three together.

The will was executed on December 22, 1923, and the evidence in the circuit court was given on March 6, 1936, more than 12 years after the execution of the will. It is entirely probable that a witness might, after 12 years, not recall the details and everything that was said. Stephens' testimony is clear and positive. He swears he saw Evans sign the will. A son of Evans testifies that it is his father's signature. Brown admits that Evans called them in for the purpose of witnessing his will. The will was probated in December, 1934. The record shows that Brown and Stephens appeared before the clerk and testified that they were the subscribing witnesses to Evans' will; that the instrument was executed at the time, place, and by the person therein named, and that in the presence of both of the witnesses, Stephens and Brown, Evans declared it to be his last will and testament, and subscribed his name thereto in the presence of both witnesses, and that at the request of the testator witnesses wrote their names in Evans' presence and in the presence of each other. This affidavit was subscribed and sworn to by both Stephens and Brown.

It is first contended by the appellants that the court should have directed a verdict in their favor, and they call attention to authorities to the effect that the right

to make a will is created by statute, the provisions of which prescribing the method of execution are mandatory in character, and the will must be executed in accordance with the prescribed requirements, or it will be void.

The first authority cited is 68 C. J. 648. This authority, as well as others cited by appellant, are all to the effect that a failure to comply with the requirements is fatal to the validity of the will, and no defect in the execution can be aided or supplied by parol proof. But the same section in 68 C. J. cited and relied on by appellants, contains the following:

"But where the requirements have been complied with, the will must be upheld, as the courts have no power to prescribe other requirements. If the will is executed in accordance with the statutory requirements, it is of no consequence who drafted the instrument or under what circumstances it was drafted."

The purpose of the statutes is to prevent imposition, fraud, deception, and to prevent the substitution of some other writing in place of the will.

This court has held that the validity of a will depends on the compliance with the statute, rather than on the good memory of one of the witnesses. The statute requires the testator to declare, in the presence of the witnesses, that the instrument he has signed is his will and testament, but he is not required to use any particular words. *Rogers* v. *Diamond,* 13 Ark. 474.

In the instant case all the parties were together, within a few feet of each other, and the evidence of witnesses, together with the circumstances and situation of the parties, sufficiently establishes the fact that the will was executed as the statute requires.

Appellant next argues that the testimony of J. B. Evans, who testified that it was his father's signature at the end of the will, was without probative force because he did not know when the signature was placed on the alleged will. That is true, he did not know when the signature was placed there, but he was introduced for the purpose of proving that that was his father's signature. Appellant does not dispute that it was his signature, but says that this was not in issue; but that the issue was

whether or not the signature was placed there in accordance with the statutory requirements.

It is next contended by appellant that it was necessary for both witnesses to see the signature of the testator. As we have already said, we think the evidence shows that Brown did see the signature of Evans on the will.

It is not required that both witnesses remember all the details. A requirement of this kind would defeat many wills. The validity of the will depends upon whether it was executed as the law requires, and does not depend on the memory of a witness. The will might be executed properly, and a witness might forget about it, especially when his testimony is given several years after the execution of the will.

"While under the wording of, and construction placed on, the statutes in a majority of jurisdictions, it is necessary to produce and examine the full number of witnesses required by law to attest a will if they are alive, sane, and within the jurisdiction of the court, at least where the will is contested, and a like rule obtains in a suit in equity to establish a will, it is not essential that due execution of the will be proved or established by the testimony of all or any of the subscribing witnesses so produced and examined. Execution may be sufficiently proved where one witness testifies positively to the requisites of execution, and another does not recollect, or denies some of the requisites." 68 C. J. 1021, 1022.

The evidence leaves no doubt that Evans, in 1923, made a will and called Brown and Stephens in as witnesses. Stephens testimony is positive. He testifies that Evans was using a pen at the post office, and signed with that in green ink. If this had not been true, the introduction of the will itself would have shown that it was not signed in green ink. Stephens' explanation is reasonable, all three parties were together. After Evans signed it with green ink, Stephens signed with his fountain pen and handed it to Brown. Brown does not deny this; he does not deny his signature, but he simply says he does not remember.

The verdict and judgment of the circuit court is supported by a preponderance of the evidence, and the judgment is, therefore, affirmed.