LEISTER *v.* CHITWOOD.

4-9050                                                225 S. W. 2d 936

Opinion delivered January 16, 1950.

*Bland, Kincannon & Bethell,* for appellant.

*Partain, Agee & Partain,* for appellee.

DUNAWAY, J. The sole question for our decision is whether the will of D. L. Z. Chitwood was attested by two witnesses as required by our statute. From a finding of the Crawford Probate Court that the will was executed in the manner and form required by law comes this appeal.

D. L. Z. Chitwood, a retired insurance man, over eighty years of age, who resided in Mulberry, Crawford County, Arkansas, died at about five o'clock the morning of September 1, 1948. Sometime during the night of August 31—September 1, 1948, an instrument purporting to be his last will and testament was executed. On September 9, 1948, R. J. Chitwood and Atha Chitwood appeared before the probate clerk and signed an affidavit as proof of execution of the will. After due notice by publication, on October 1, 1948, the will was admitted to probate in common form. Auten M. Chitwood, Sr., was appointed administrator with the will annexed. On December 7, 1948, Esma Leister, a sister of the decedent, began this action contesting the probate of the will on the ground

that it was not attested by two witnesses as required by law.

There is no question of fraud or lack of testamentary capacity. It is admitted that the testator executed the instrument in question, that it expressed his wishes in regard to the disposition of his $20,000 estate, and that Atha Chitwood subscribed the will in accordance with the statutory requirements. It is also admitted that R. J. Chitwood, the second attesting witness, signed the instrument but appellant contends that he did so under circumstances which did not fulfull the requirements of the statute.

The formalities prescribed by law for the execution of wills are set out in Ark. Stats. (1947), § 60-104:

"Second: Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or should be acknowledged by him to have been so made to each of the attesting witnesses.

"Third: The testator, at the time of making subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his will and testament.

"Fourth: There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator."

The testimony of the two attesting witnesses as to the execution of the will is in hopeless conflict. The version of Atha Chitwood, who is the wife of appellee, Auten Chitwood, Sr., administrator and principal beneficiary under the will, may be briefly summarized as follows: On the evening of August 31, 1948, Atha and Auten Chitwood, distant cousins of the testator, were at his home where he had been confined to his bed for some time. R. J. Chitwood and his wife Kitty, old friends of the testator who were living with him in his home, were also present at the house that evening. In the late afternoon, the testator's doctor had called on him, and informed him that no prognosis of his future condition could be

made, but that a change for better or worse could be expected very shortly. Early in the evening, R. J. and Kitty Chitwood departed from testator's sickroom, leaving Auten and Atha. The testator then informed them that he desired to make a will. Auten was instructed to contact T. J. House, a local banker, with whom the testator had earlier discussed preparing his will for him. Several phone calls were made to the House home, but he could not be located. Testator then dictated his will to Atha, who wrote it down in pencil on a single sheet of tablet paper. The instrument in question, dated August 31, 1948, closed with this attestation clause, also dictated by the testator: "We now sign as witnesses to the last will of D. L. Z. Chitwood at his request."

Testator then asked Auten to get R. J. to come in and witness the will. When Auten and R. J. returned the testator said, "Riley, (R. J.) this is my will, and I want you to sign it." Testator then sat up on the side of his bed and signed the will. After the testator had signed, he handed the paper to Atha, who signed and in turn handed it to Auten. Auten then signed, and handed it to R. J., who sat down at a desk and affixed his signature. R. J. went back to his room, while Auten and Atha remained until the testator died at about five o'clock the next morning. Atha testified that the execution of the will occurred about nine o'clock.

R. J. Chitwood, on direct examination as a witness for appellant, gave this testimony as to the execution of the will: On the evening in question, he and Kitty were in testator's room, until they retired about ten o'clock, leaving Auten and Atha there. No mention of a will was made by the testator. Sometime between four and five o'clock the next morning, they were awakened by Atha and told to come to testator's room. R. J. arrived some few minutes before Kitty, and went to the bed where testator was lying on his side and laid his hand on him. Testator did not speak. Auten then handed him a paper and told him testator wanted him to sign it. Testator did not tell him it was his will, and R. J. did not *think* testator asked him to witness it. Nor did he *think* anyone else

signed at that time, but he *believed* there was another signature on it. He could not say whether testator knew he signed it or not, but he did sign in the room where he was sick. While the witness was sitting at the desk affixing his signature, Dr. Kirksey, testator's physician, came in, and shortly thereafter at five o'clock pronounced testator dead.

The Proof of Will was executed by R. J. Chitwood and Atha Chitwood at the court house before the clerk of the Probate Court of Crawford County. In said affidavit they swore that they were the subscribing witnesses to the will of D. L. Z. Chitwood; that in their presence he declared it to be his last Will and Testament and subscribed his name thereto in their presence; and that at testator's request they signed said will in his presence and in the presence of each other.

The testimony of R. J. Chitwood was taken by deposition. Atha Chitwood testified in person at the trial of this cause. Not only was their testimony conflicting as to the execution of the will, but also as to their execution of the Proof of Will. R. J. Chitwood admitted signing the affidavit, but he could not say positively whether it was read to him before he signed; he could not remember whether he swore to the truth of its contents. On the other hand Atha Chitwood testified that the affidavit had been read to them before they signed, and that they were sworn by the clerk at the time of its execution.

Henry Batchelor, the clerk, testified that R. J. Chitwood read the affidavit, to which the will was attached. In addition, the clerk testified that in response to his question: "Is this your signature and that of Mr. D. L. Z. Chitwood?" R. J. Chitwood said, "Yes, Doc asked me to sign it," and then explained that "Doc" was D. L. Z. Chitwood.

Appellant argues that the testimony of Atha Chitwood as to the execution of the will cannot be believed because of her husband's substantial interest in the estate if the probate of the will stands. It is conceded, however, that she is a competent subscribing witness un-

der our decision in *Rockafellow* v. *Rockafellow,* 192 Ark. 563, 93 S. W. 2d 321. In considering the credibility of this witness we recognize the possible influence on her of having a sizable bequest to her husband dependent upon her testimony. Although on appeal probate proceedings are tried *de novo* we will give consideration to the findings of the probate judge, who heard the oral testimony and had an opportunity to study the expressions, demeanor and general attitude of the witness.

The statute above quoted is, of course, mandatory and must be complied with before a will can be admitted to probate. *Johnson* v. *Hinton,* 130 Ark. 394, 197 S. W. 706; *Graves* v. *Bowles,* 193 Ark. 546, 101 S. W. 2d 176. In the instant case, sufficient proof of execution was made before the probate clerk to entitle the will to probate in the absence of any evidence to the contrary.

The will having been admitted to probate in common form, appellant had the burden of overcoming the presumption of its due execution. In *Anthony* v. *College of the Ozarks,* 207 Ark. 212, at page 219, 180 S. W. 2d 321, we said: "The applicable rule, as stated in 68 C. J., 982, § 749, is as follows: 'No presumption of the due execution of a will arises from the mere production of an instrument purporting to be a last will and testament. . . . Where, however, in proceedings for the probate of an instrument as a will it appears to have been duly executed as such, and the attestation is established by proof of the handwriting of the witnesses or otherwise, although their testimony is not available, or they do not remember the transaction, it will be presumed, in the absence of evidence to the contrary, that the will was executed in compliance with all the requirements of law, including those relating to publication, attestation in the presence of the testator, and the affixing of the testator's signature prior to those of the witnesses'."

The means of satisfying the requirements of the provisions of our statute here in question were fully discussed by this court in the early case of *Rogers et al* v. *Diamond,* 13 Ark. 474. There we said: ". . . each of the attesting witnesses must sign his name as a wit-

ness, at the request of the testator, but such request might be inferred from the attendant circumstances in proof by signs or gestures as well as words: as in *Rutherford* v. *Rutherford*, (1 Denio 33, 43 Am. Dec. 644), by the testator desiring the witness to be sent for to attest the execution of his will, or from a request made to such witness by another person in the testator's presence. If there be any evidence from which the jury might infer a request, that as a question of fact ought to be submitted to them"[1] (page 487), and at page 489: "Publication under the statute is necessary to give effect to a will; but it means that the testator, having capacity to make a will, shall understand that the instrument which he is about to execute, is a testamentary disposition of his property, and that he shall, at the time, communicate to the witnesses, that he does so understand it. The statute says he shall declare it; but in *Remson* v. *Brinkerhoff*, (26 Wend. 325) 37 Am. Dec. 251, NELSON, C.J., said that no particular form of words is necessary, and that it would be unwise, if not unsafe, to speculate upon the precise mode of communication, as every case must depend upon its own peculiar circumstances. The fact of publication, therefore, is to be inferred or not, from all the circumstances attending the execution of the will; all that is said and done as part of the *res gestae.*"

In the case at bar, one of the attesting witnesses, Atha Chitwood, told a consistent, straightforward story of the execution of the will. The other, R. J. Chitwood, gave testimony full of inconsistencies. It should be noted that this witness was eighty years of age, and was ill himself at the time his deposition was taken; in fact he had just returned from a doctor's office. His own comment to one of the attorneys questioning him was: "I can't recall about it for sure. If you had come earlier or later, I would have done a better job of this than I can now." After first saying that he did not *think* anyone else signed the will when he did, R. J. Chitwood on cross-

---

[1] Under our present procedure, of course, there is no jury and the fact question is determined initially by the trial court based upon a preponderance of the evidence. On the trial *de novo* on appeal we use the same standard.

examination said he *thought* he saw Atha Chitwood sign it.

In his deposition R. J. Chitwood made this statement in regard to his signing the will: "I am not trying to dodge behind anything. What makes this so hard, I thought at the time this thing occurred, I was doing absolutely the thing that D. L. Z. wanted done and I still think I was, I am solid and firm in it and I never expected to hear anything from it later; I thought that was the way he wanted it and now since it has come up, it brings a lot of different shadows on it and it puts a different light on part of it and I am still just as firm in my opinion that I did what D. L. Z. wanted done and I did it because D. L. Z. wanted it done."

In the case of *Evans* v. *Evans,* 193 Ark. 585, 101 S. W. 2d 435, we said at page 590: "The validity of the will depends upon whether it was executed as the law requires, and does not depend on the memory of a witness . . . it is not essential that due execution of the will be proved or established by the testimony of all or any of the subscribing witnesses so produced and examined. Execution may be sufficiently proved where one witness testifies positively to the requisites of execution, and another does not recollect, or denies some of the requisites."

It must be remembered in considering the testimony of R. J. Chitwood as given in his deposition, that it was in conflict with his earlier sworn statement made before the probate clerk just eight days after the execution of the will. It is also in conflict with his statement to the clerk that "Doc asked me to sign it."

The testimony of Atha Chitwood was in part corroborated by the testimony of the Mulberry telephone operator that between eight and ten o'clock in the evening of August 31, 1948, Auten Chitwood did make several calls to the residence of T. J. House. Dr. Kirksey's testimony discredited the account given by R. J. Chitwood in that the doctor testified that when he arrived at the D. L. Z. Chitwood house he met this witness in the hall and that the testator was already dead. R. J. Chitwood

was not sitting at the desk signing the will as he had testified.

The situation, as here, where one of the subscribing witnesses denies the existence of certain facts necessary for legal execution of a will, is discussed in 2 *Page on Wills* (Lifetime Ed.), § 758. There it is stated: "The testimony of the subscribing witnesses which denies the performance of one or more of the facts which are necessary to the validity of the will is, at best, to be received with caution, and to be viewed with suspicion. . . .

The subscribing witnesses are especially discredited where they testify in favor of the will at probate and against it at contest; or where they hesitate and evade before denying the validity of the execution of the will" (page 473).

The evidence adduced in this case presented a fact question as to the due execution of the will for decision by the court. The weight to be given the presumption of due execution, it being undisputed that the testator and two witnesses had subscribed the will; and the weight to be given the testimony of the witnesses concerning the transaction were for the court to determine. On appeal the judgment of the Probate Court will not be disturbed unless it is against the preponderance of the evidence. *Gray* v. *Fulton,* 205 Ark. 675, 170 S. W. 2d 384. The finding of the Probate Court that the will of D. L. Z. Chitwood was duly executed was not against the preponderance of the evidence.

Affirmed.