BALLARD *v.* BEARD.

5-3318                                            382 S. W. 2d 593

Opinion delivered October 12, 1964.

*E. V. Trimble,* for appellant.

*Cockrill, Laser, McGehee & Sharp,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal is an effort to have an instrument admitted to probate as the last will and testament of Ethel Bell Beard. The appellant is one of the beneficiaries under the alleged will, and appellee is the surviving husband of the deceased.

Ethel Bell Beard died April 5, 1963. Seven days later an instrument was admitted to probate as her last will and testament. On April 23, 1963, Leroy Beard, surviving husband of the deceased, filed this petition[1] praying that the probate order be set aside. On September 3, 1963, the Probate Court heard the contest; and set aside the order of probate, finding that Ethel Bell Beard died intestate. From the said order[2] of September

---

[1] He alleged, regarding the instrument: "(a) It is not duly executed, witnessed or attested by two or more credible witnesses in the presence of each other and in the presence and at the request of the decedent; . . ."

[2] Here is the text of the order challenged on appeal: "Now on this day this cause comes on to be heard, petitioner Leroy Beard, appearing by his solicitor, Abner McGehee, and Dora King, Executrix of the Estate of Ethel Bell Beard, appearing in person and by her solicitor, Edward V. Trimble, the same is submitted to the Court upon the

460

3rd there is this appeal; and the points of appellant's argument are:

"1. That it will be presumed, in the absence of contrary evidence, that will was executed in compliance with all requirements of law.

"2. That the Court errored in permitting witnesses to give parole testimony to vary the written instrument that they signed.

"3. That the Appellee has not sustained the burden of proof required for nullifying the genuineness of the Will."

We consolidate and consider the appellant's points together. The evidence offered to the Court at the hearing on April 12, 1963, when the will was admitted to probate, was the usual form of "proof of will," and was as follows:

## "PROOF OF WILL

"We, C. Washington, and Willie Williams, on oath state:

"We are the subscribing witnesses to the attached written instrument, dated September 11, day of 1963,

petition to contest probate of will, testimony of witnesses and exhibits thereto, from all of which the Court doth find:

"1. That the petition to contest the probate of will filed herein was filed within the time allowed by law.

"2. That the instrument purporting to be the last will and testament of Ethel Bell Beard which was admitted to probate by this court on the 12th day of April, 1963, was not executed, witnessed or attested by two or more credible witnesses in the presence of each other and in the presence and at the request of the decedent, and that the order admitting said purported will to probate should be set aside, and Dora King, heretofore appointed executrix of the estate of Ethel Bell Beard, is hereby discharged as executrix of said estate.

"3. That the decedent, Ethel Bell Beard died intestate. "It is, therefore, by the Court Considered, Ordered, Adjudged, and Decreed that the order admitting an instrument purporting to be the last will and testament of Ethel Bell Beard to probate is hereby set aside, and Dora King is hereby discharged as Executrix of the Estate of Ethel Bell Beard and is further ordered to make a complete and final accounting of her actions as such executrix to this court within ten days of the entry of this order; and the Court hereby appoints Leroy Beard, surviving spouse of Ethel Bell Beard, as administrator of her estate and to serve in such capacity without the necessity of bond, and the Clerk of this Court is hereby ordered to issue Letters of Administration to the said Leroy Beard. Dated this 3rd day of September, 1963."

which purports to be the last will of Ethel Bell Beard, deceased. On the execution date of the instrument the testatrix, in our presence, signed the instrument at the end thereof, or acknowledged her signature thereto, declared the instrument to be her will, and requested that we attest her execution thereof; whereupon, in the presence of the testator each of us signed our respective names as attesting witnesses. At the time of execution of the instrument the testatrix appeared to be eighteen years of age or older, of sound mind, and acting without undue influence, fraud or restraint.

"DATED this 11th day of April, 1963.

"/s/ Willie Williams
"/s/ Cleouphs Washington

"STATE OF ARKANSAS
COUNTY OF PULASKI

Subscribed and sworn to before me this 11th day of April, 1963. /s/ Alice S. Trimble, Notary Public (SEAL)."

At the trial on September 3, 1963, each of the alleged attesting witnesses to the will — *i.e.*, Cleouphs Washington and Willie Williams—testified against the proof of will and also against the attestation of the will. Regarding the "proof of will," Cleouphs Washington testified that he merely signed a paper that some man brought to him; that he never swore to the paper; and that he was not in the presence of the alleged notary at any time. Willie Williams testified that no notary public was present when he signed the paper; that he was never sworn; and that he did not know what the paper was. The Notary Public whose name appears on the proof of will was not called to testify as a witness to refute the testimony of the witnesses, Washington and Williams, or to show that the Notary did administer any oath to either of them. So the "proof of will," on which the initial probate was based, stands entirely impeached; and the Court was correct in setting aside the probate of a will where due proof had never been made.

We come then to the testimony of Washington and Williams as to the attestation of the proffered will; and each of them testified against the validity of the instrument. The will—the original of which is before this Court—was a typewritten instrument prepared by a person who was not a lawyer. The first page of the will concludes with the signature of the alleged testatrix; and the entire attestation is on a second and separate page. Cleouphs Washington testified that Zola McGuire brought the attestation page to him at his home and asked him to sign it, telling him that Ethel Bell Beard was in the hospital and wanted him to sign the page; and that he signed it under those circumstances. He testified that when he signed the page only he and Zola McGuire were present; that he never saw Ethel Bell Beard or Willie Williams sign any instrument of any kind at any time; and that Ethel Bell Beard never at any time asked him to sign as a witness to her will. Willie Williams testified that Zola McGuire brought a paper to him at his home and asked him to sign it, claiming it related to some out-of-town property; that he wrote his name; that only he and Zola McGuire were present; that he never saw Ethel Bell Beard sign her name; that she never asked him to witness any instrument; and that Cleouphs Washington was not present when he signed the said paper for Zola McGuire. While there was some slight contradiction to the testimony of these witnesses, yet, in the main, their testimony stood up against vigorous cross-examination. A significant fact is that Zola McGuire did not testify.

The appellant insists that the Court should not have allowed Washington and Williams to testify *in disparity of the proof of will or against the attestation of the will;* but we hold that they were competent to so testify, even though their testimony under such circumstances is viewed with suspicion. In *Leister v. Chitwood,* 216 Ark. 418, 225 S. W. 2d 936, we quoted from *Rogers v. Diamond,* 13 Ark. 474, and from *Anthony v. College of the Ozarks,* 207 Ark. 212, 180 S. W. 2d 321; and then used this language:

"The situation, as here, where one of the subscribing witnesses denies the existence of certain facts necessary for legal execution of a will, is discussed in 2 Page on Wills (Lifetime Ed.), § 758. There it is stated: 'The testimony of the subscribing witnesses which denies the performance of one or more of the facts which are necessary to the validity of the will is, at best, to be received with caution, and to be viewed with suspicion . . .

"The subscribing witnesses are especially discredited where they testify in favor of the will at probate and against it at contest; or where they hesitate and evade before denying the validity of the execution of the will' (page 473)."

Likewise, in *Bruere* v. *Mullins,* 229 Ark. 904, 320 S. W. 2d 274, we recognized the general rule that attesting witnesses may testify against the validity of the will, even though their testimony is viewed with suspicion. Cases generally are to the same effect. See 57 Am. Jur. p. 585, "Wills" § 881; annotation in 79 A. L. R. 394 entitled, "Admissibility and credibility of testimony of subscribing witness tending to impeach execution of will or testamentary capacity of testator." See Page on Wills (Bowe-Parker Rev.) Vol. 3, § 29.24.

When we hold—as we do—that the attesting witnesses to the will were not disqualified from testifying against the validity of the will, we have decided all of appellant's points, because, with the testimony of the attesting witnesses in the record, the great preponderance of the testimony is against the validity of the will.[3] The Probate Court was correct in so holding.

Affirmed.

---

[3] Ark. Stat. Ann. § 60-403 (1947) gives the requirements for the valid execution of a will.