Opinion delivered January 30, 1967

*L. Hobson Mahon,* for appellant.

*Forrest E. Long,* for appellee.

GEORGE ROSE SMITH, Justice. This is a contest of the will of Mary Gaines Jackson, who died January 10, 1963. The will in question was executed on November 8, 1962. The appellants objected to its probate on the ground that the instrument was not signed and witnessed in the manner required by law and on the additional ground that the testatrix lacked testamentary capacity. The probate court sustained the will. Here the appellants attack the will upon the same grounds that were asserted in the court below.

We consider first the validity of the testatrix's sig-

nature. When the will was executed the testatrix, Mrs. Jackson, was about a hundred years old. For the preceding seventeen or eighteen years she had been totally blind. Before her affliction Mrs. Jackson had been able to read and write, but the contestants proved by several witnesses that after she lost her sight she made no attempt to write and customarily signed her name by mark. Inasmuch as the will bears the testatrix's purported signature, the appellants insist that it could not have been genuine.

This argument fails to take into account the proponents' proof. The typewritten will was prepared by Florence D. Sands, who was present at its execution. Mrs. Sands testified that after reading the will aloud she assisted the testatrix in signing it. The pen was in the testatrix's hand, but Mrs. Sands helped her write her name. The signature, as it appears upon a photostatic copy of the will in the record, is not illegible, but the letters are so badly formed as to confirm Mrs. Sands' testimony.

Upon this point the case is governed by *Vines* v. *Clingfost*, 21 Ark. 309 (1860). There the testator was so feeble that the draftsman of the will guided the testator's hand as he signed the instrument. We upheld the will, saying: "If one having testamentary capacity, is unable from palsy or other cause, to steady his hand so as to make to his will the signature required by law, another person may hold his hand and aid him in so doing; and it is not necessary to prove any express request from the testator for such assistance. The act is his own, with the assistance of another, and not the act of another under authority from him." In the case at bar the testimony convinces us that the testatrix intended to sign the will and merely accepted aid in carrying out her purpose.

We come next to the formalities attending the execution of the will. Mrs. Jackson was in bed when she signed the will. The two attesting witnesses, Fred L.

Harris and Marie Ellison, then came separately into the room and signed the will beneath a typical attestation clause. The appellants seem to contend, though this is not clear, that the two witnesses were required to sign the will in the presence of each other.

There has never been any requirement in Arkansas that the two witnesses sign in the presence of each other, though in construing our original statute we said that such a course might be most prudent. *Rogers* v. *Diamond*, 13 Ark. 474 (1853). In fact, very few states have such a requirement, and where it exists it is clearly expressed in the statute. Atkinson, Wills, 295 (1937).

The Probate Code made no change in our law in this respect. We quote the pertinent section of the Code, Ark. Stat. Ann. § 60-403 (Supp. 1965):

The execution of a will, other than holographic, must be by the signature of the testator and of at least two witnesses as follows:

a. TESTATOR. The testator shall declare to the attesting witnesses that the instrument is his will and either

(1) Himself sign; or

(2) Acknowledge his signature already made; or

(3) Sign by mark, his name being written near it and witnessed by a person who writes his own name as witness to the signature; or

(4) At his discretion and in his presence have someone else sign his name for him, (the person so signing shall write his own name and state that he signed the testator's name at the request of the testator); and

(5) In any of the above cases the signature must be at the end of the instrument and the act must be

done in the presence of two or more attesting witnesses.

b. WITNESSES. The attesting witnesses must sign at the request and in the presence of the testator.

It will be seen that the section contains two subdivisions. Subsection *a* is headed "Testator" and deals only with the manner in which the testator is to execute the will. The requirement that "the act must be done in the presence of two or more witnesses" discloses no legislative intention to require that the witnesses sign in each other's presence.

Subsection *b* is headed "Witnesses" and requires merely that the witnesses sign at the request and in the presence of the testator. Had the legislature intended to change the law, clearly the modification would have been inserted in subsection *b*. Our conclusion is reinforced by Official Probate Form 4, "Proof of Will," 214 Ark. xix. That form, prepared by the draftsmen of the Code and promulgated by this court, contains no recitation that the witnesses signed in the presence of each other.

Only one of the attesting witnesses, Harris, testified, and he did not explicitly state that Mrs. Jackson acknowledged her signature and requested him to sign as a witness. He did say, however, that he was told that the instrument was a will and that he was asked to sign it. Mrs. Sands, a disinterested witness who was present throughout the execution process, testified clearly that the testatrix knew what she was doing and that the two witnesses came in and signed the will in her presence. The testimony is sufficient, under our decisions, to support an inference from the circumstances that all the statutory provisions were substantially complied with. *Hanel* v. *Springle,* 237 Ark. 356, 372 S. W. 2d 822 (1963); *Leister* v. *Chitwood,* 216 Ark. 418, 225 S. W. 2d 936 (1950).

We need not discuss the remaining issue, that of

testamentary capacity, in detail. The contestants' proof was directed principally to the testatrix's asserted inability to write her name. The one medical witness testified that Mrs. Jackson suffered from senility, that her mind would come and go. He did not attempt to say unequivocally that the testatrix lacked testamentary capacity on the day the will was executed. The lay testimony preponderates in favor of the view that Mrs. Jackson had sufficient mental ability to meet the familiar tests of testamentary capacity. Finally, there is nothing of an unusual nature in the will itself. There is a devise of real property to the testatrix's only child, a bequest of personal property to her brother and sister, and a devise of real property to her niece, Sally Walls, who had lived in Mrs. Jackson's home and taken care of her for more than a year. Upon the record as a whole we are convinced that the probate court correctly upheld the will.

Affirmed.

BYRD, J., concurs.

HARRIS, C. J., dissents.

CONLEY BYRD, Justice, concurring. This is an appeal by Mattie Jordon Coleman et al., heirs at law of Mary Gaines Jackson, from a decree admitting to probate a will executed some three months before the aged testatrix's death. The contestants allege that the will was not signed by the testatrix in the manner required by law; that it was not properly attested by the witnesses in the presence of each other; and that the testatrix did not have sufficient testamentary capacity.

Contestants' first point is directed to the fact that the will bears testatrix's purported signature. During the trial much testimony was directed to the fact that testatrix became blind 17 or 18 years before her death and that she did not thereafter attempt to write. There was also proof to the effect that testatrix had made oth-

er wills before the present one was executed and that testatrix had executed the previous wills with an ''X.'' However, the draftsman of the will, a Mrs. Sands, testified that, after reading the will to the testatrix, she ''sorta held her hand to keep it on the line'' while she signed the will.

We held in *Vines et al* v. *Clingfost, Exr.,* 21 Ark. 309 (1860), that where the testator holds the pen in subscribing his name to the will, and another person guides it, the signature thus made is the act of the testator and that it was not necessary for the person guiding the testator's hand to sign the will as an attesting witness to the signature. Under the circumstances, we hold that the trial court's finding of validity on this issue is not contrary to the evidence.

The second point raises the issue of whether a will is validly executed when not attested by the witnesses in the presence of each other. The Probate Code, Ark. Stat. Ann. § 60-403 (Supp. 1965), provides as follows, to-wit:

*Execution.*—The execution of a will, other than holographic, must be by the signature of the testator and of at least two witnesses as follows:

a. . . .

(1) Himself sign; or

. . .

(5) In any of the above cases the signature must be at the end of the instrument and *the act must be done in the presence of two or more attesting witnesses.* (Emphasis supplied.)

This section of the Probate Code was before the court in *Ash* v. *Morgan,* 232 Ark. 602, 339 S. W. 2d 309 (1960). In commenting upon the necessity for the witnesses to attest the will in the presence of each other, the court used the following language, to-wit:

''We think it evident from the above admitted facts

that the sections of § 60-403 specifically requiring that a will to be valid must be executed 'in the presence of two or more attesting witnesses... [and] the attesting witnesses must sign at the request and in the presence of the testator', were not complied with, and therefore the will must be and is declared invalid.

But, says appellant, there was substantial compliance with the statute here involved (Ark. Stats. § 60-403). What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. Here neither of the alleged attesting witnesses signed in the presence of the testator, *nor in the presence of each other.*" (Emphasis supplied.)

Consequently, the writer is of the opinion that under the Probate Code, Ark. Stat. Ann. § 60-403 a(5) (Supp. 1965), it is a prerequisite to the validity of a will that the attesting witnesses must attest the testator's execution or the acknowledgment thereof in the presence not only of the testator but of each other. Other members of the court, relying on *Rogers* v. *Diamond,* 13 Ark. 474 (1853), take the position that there has never been any requirement that the attestation by two witnesses must be in the presence of each other. However, the statute (now codified as Ark. Stat. Ann. § 60-104 [1947]) upon which *Rogers* v. *Diamond, supra,* was based reads substantially different from Probate Code, quoted above. The statute there relied upon provided that the subscription by the attesting witnesses ". . shall *be made by the testator in the presence of each of the attesting witnesses. . .*" (Emphasis supplied.) When the foregoing language is compared with the present Probate Code, *i. e.* ". . . the act must be done in the presence of two or more attesting witnesses," it appears that the Probate Code, Ark. Stat. Ann. § 60-403 a(5) (Supp. 1965), changed the law to conform to what this court said in *Rogers* v. *Diamond, supra,* would be the most prudent course.

Having decided that the Probate Code requires that the witnesses attesting a will must do so in the presence of the testator and each other, it does not necessarily follow that the witnesses in this case did not attest the will in the presence of each other as the term "presence" has been interpreted under the so-called "conscious presence" tests. *In re Hoffman's Estate,* Dist. Ct. of App., 290 P. 2d 669 (Cal. 1955).

The only attesting witness who testified stated he was one of the witnesses to an instrument that they said was a will, and that he and the other attesting witness had been eating in the kitchen before they went into the room where the testatrix and Mrs. Sands were. They asked him to sign first and after he signed he immediately left the room and went out in the back yard. He didn't know what happened after he left the room, but the other witness (Marie) told him that she had signed her name.

Under any practical interpretation of the statutory provision, Ark. Stat. Ann. § 60-403 a(5) (Supp. 1965), requiring the execution of a will "in the presence of two or more attesting witnesses," the execution described obviously was attested by the witnesses in the presence of each other.

On the issue of testamentary capacity, the testimony was conflicting. While most of the contestants' attack was directed to the asserted inability of the testatrix to write, there was testimony which, if believed by the trial court, would have sustained a finding in their favor. However, the testimony of the will draftsman and others to the effect that testatrix's mental state was reasonably clear; that even with her blindness she would sometimes recognize her friends and kindred; and that she knew her relatives, and also knew what property she owned, was sufficient to sustain the trial court's finding to the effect that she had sufficient testamentary capacity to make the will.

Therefore I concur in the affirmance.