LILLIE WALPOLE v. IRENE KELLY LEWIS

5-6198                    492 S.W. 2d 410

Opinion delivered March 19, 1973

90

*L. A. Hardin,* for appellant.

*Curtis E. Rickard,* for appellee.

JOHN A. FOGLEMAN, Justice. Lillie Walpole brings this appeal from a judgment of a probate court holding that certain attempted deletions in one paragraph of a purported will of Lovie Harris were ineffective because the result of eliminating the words stricken would increase the estate that appellant would take. She asserts

two points for reversal: first, that the holographic will requires no attestation, and, second, that the "strike outs" and obliterations made by the testatrix on her will operate only as a revocation of the parts stricken and obliterated without the necessity of any attestation.

Sam Gibson was appointed administrator of the estate of Lovie Harris on the 16th day of March, 1972. Soon after his appointment, he went to the house where his decedent had lived to remove her personal property, and found some papers and documents, including an abstract, old receipts, and a handwritten will dated July 3, 1961, in a box in a closet. He passed the will along to his attorney, Fred Briner. On March 30, 1972, he presented to the probate court this will, a typed instrument of a testamentary nature dated June 3, 1967, which appeared to bear the unattested signature of Lovie Harris, and another typed instrument dated in October 1968, which was also signed "Lovie Harris" without attestation. Gibson, by petition, asked the court to determine the validity of the various wills.

Appellant filed an answer, alleging that Lovie Harris had told her that she had bequeathed the homeplace to appellant, and prayed that the will of July 3, 1961, be admitted to probate, since that will, as altered, was consistent with these statements. Irene Kelly Lewis petitioned the court to admit the same will to probate, but to disregard the obliterations as not having been made with the intent of revoking any part of the will. The heirs of Lovie Harris, insofar as known to the administrator, were all collateral heirs, but neither of the responding parties was among them. After hearing evidence, the probate court admitted the will to probate, reciting in its order that it was a holographic will, but held that the "strike outs" in paragraph one were ineffective as a revocation, as they, in effect, made a new testamentary disposition, requiring attestation, which was lacking. The court held that the "strike outs" in two paragraphs of the second page constituted a revocation of those paragraphs because they eliminated specific bequests, and there was no residuary clause. The court directed that this will be admitted to probate, insofar as the first paragraph was concerned but denied effect to the two paragraphs on page two.

The will in question is reproduced as an appendix as it appears in the record in order to aid in an understanding of our disposition of the case.

The parties and the probate court treat the will in question as if it must be regarded as holographic. While it probably qualifies as such, we consider it also to be entitled to probate as an attested will. The same will can be sustained both as holographic and attested. *Mason v. Bowen*, 122 Ark. 407, 183 S.W. 973, Ann. Cas. 1917D 713. We consider probate appeals de novo. *Ross v. Edwards*, 231 Ark. 902, 333 S.W. 2d 487. We consider the evidence sufficient to establish the will as an attested will.

An instrument signed at the end by the testatrix, in the presence of two attesting witnesses, is valid as an attested will if the attesting witnesses sign as such at the request of and in the presence of the testator. Ark. Stat. Ann. § 60-403 (Repl. 1971).

It has long been recognized that it is not necessary to have the testimony of both attesting witnesses to establish due execution of a will. Actually, a will may be established without the testimony of either of them or even against their testimony. *Rogers v. Diamond*, 13 Ark. 474; *Evans v. Evans*, 193 Ark. 585, 101 S.W. 2d 435; *Leister v. Chitwood*, 216 Ark. 418, 225 S.W. 2d 936. The present requirements for establishing an attested will are set out in Ark. Stat. Ann. §§ 62-2117, 2118 (Repl. 1971), which we have said must be read together and construed to permit establishment of the will by any legally admissible evidence of the requisite facts in order that the testator's wishes may not be thwarted by straitlaced construction of statutory language. *In re Altheimer's Estate*, 221 Ark. 941, 256 S.W. 2d 719. Under these statutes and the *Altheimer* decision, authenticity may be supplied by the testimony of any two credible witnesses who are disinterested, by whom the testator's handwriting may be proved, and proof of such other facts and circumstances (such as the handwriting of attesting witnesses whose testimony is unavailable) as would be sufficient to prove a controverted issue in equity. It is clearly recognized that common law rules as to proof of the execution of wills are in force, unaffected by any of our statutes and that, if attesting witnesses are unavailable, it is possible

to prove the genuineness of their signatures and to raise a presumption that the will was duly executed. See Committee Comment, Ark. Stat. Ann. § 62-2118. In *Altheimer*, we reversed the judgment of a probate court rejecting a will, on the basis of the testimony of one attesting witness, and proof of the handwriting of the testatrix and the other attesting witness.

Here we have virtually the same evidence. Margaret Bright testified that she witnessed this will at the request of Lovie Harris, who, she believed, mentioned that it was her will. She stated that the writing on the will and the signature thereto were definitely in the handwriting of Mrs. Harris and that Mr. Turley, the other attesting witness was present at the time. Mrs. Bright lived across the street from the testatrix for 26 of the 30 years of their acquaintance and saw her daily while the two were neighbors and at least twice a week after the witness moved to Little Rock from Saline County. Jim Turley, the son of Arthur F. Turley, had known Lovie Harris since he was five or six years old and was her pupil in school. He was the operator of the gasoline filling station where Mrs. Harris did business and signed tickets for her purchases until she became ill and unable to drive a car. He said that the signature at the bottom of the will was hers and identified the signature of his father. Mrs. Flossie Turley, a widow of Arthur F. Turley, also said that the signature of his name looked like his handwriting and his signature.

Neither of these three witnesses had any interest whatever in the matter at the time of their testimony.[1] Nothing was shown which would be calculated to impair their credibility. We take the requirement of testimony of "credible disinterested witnesses" to be somewhat similar to that of the "unimpeachable evidence" of "disinterested witnesses" formerly required for proof of a holographic will by Revised Statutes, Chapter 157, Section 4, Kirby's Digest, § 8012, Fifth Paragraph; Pope's Digest 14512, Fifth Paragraph. We said that the latter requirement was satisfied when there was no evidence reflecting on the character or testimony of the witnes-

[1]Margaret Bright might have been a contingent devisee, but could not benefit whether the revocation was effective or not, because Irene Kelly Lewis survived the testatrix.

ses testifying. *Smith* v. *Boswell,* 93 Ark. 66, 124 S.W. 264; *Arendt* v. *Arendt,* 80 Ark. 204, 96 S.W. 982. We find the three witnesses in this case to be disinterested and credible.

The only element not expressly shown by this testimony is the request of the testatrix that Arthur Turley sign as an attesting witness. Although it is clear that Mrs. Bright signed in the presence of Turley, it has never been required in Arkansas that the witnesses attest simultaneously or that they sign in the presence of each other. *Coleman* v. *Walls,* 241 Ark. 842, 410 S.W. 2d 749; *Rogers* v. *Diamond,* 13 Ark. 474. In determining whether there is sufficient proof of the only lacking essential, we follow our historical practice of avoiding a strict technical construction of statutory requirements where there is no indication of fraud, deception, imposition, or undue influence. If that were not done but few wills could be sustained. *Hanel* v. *Springle,* 237 Ark. 356, 372 S.W. 2d 822; *Rogers* v. *Diamond,* supra. As a corollary, the meeting of some of the requirements for due execution may be inferred from all the attending circumstances. *Hanel* v. *Springle,* supra; *Rogers* v. *Diamond,* supra. See also, *Janes* v. *Williams,* 31 Ark. 175. The only fair inference to be drawn from the circumstances shown here is that Arthur F. Turley signed as an attesting witness at the request of Lovie Harris. As we said in *Hanel,* it would be a strict, if not a dangerous, construction to require proof that the testator made a specific request of each witness to sign his name as a witness before the will is held valid.

The applicable rule in testing the sufficiency of the evidence to justify drawing such an inference was stated ed in *Anthony* v. *College of the Ozarks,* 207 Ark. 212, 180 S.W. 2d 321, by quoting from Corpus Juris, and restated in *Leister* v. *Chitwood,* 216 Ark. 418, 225 S.W. 2d 936, and *Edwards* v. *Knowles,* 225 Ark. 1024, 287 S.W. 2d 449, thus:

> No presumption of the due execution of a will arises from the mere production of an instrument purporting to be a last will and testament * * *. Where, however, in proceedings for the probate of an instrument as a will it appears to have been duly exe-

cuted as such, and the attestation is established by proof of the handwriting of the witnesses or otherwise, although their testimony is not available, or they do not remember the transaction, it will be presumed, in the absence of evidence to the contrary, that the will was executed in compliance with all the requirements of law, including those relating to publication, attestation in the presence of the testator, and the affixing of the testator's signature prior to those of the witnesses.

Application of the rule in *Anthony* clearly requires that the will before us be sustained as an attested will. Even though the will there was typewritten, the names of the testator, Donnell, and the attesting witnesses appeared in the same relative positions as they do in the Harris will. It was stipulated that the signatures of Donnell and one of the attesting witnesses, D. B. Anderson, were in the handwritings of the respective signers. As here, there was no attestation clause and only the word "Witnesses" appeared above the purported signatures of D. B. Anderson and L. M. Guthrie. There, as here, the will was found among the testator's papers. Anderson was deceased, but his signature was proven. Guthrie made an affidavit that Donnell came to Guthrie's office alone and asked affiant to sign a paper which Donnell said was his will, but that D. B. Anderson was not present and affiant was not present when Anderson signed. There we said that the effect of the testator's actions amounted not only to a substantial, but a literal, compliance with statutory requirements.

Appellant contends that the will should be considered as if the portions stricken out were eliminated, while appellee asks that the attempted cancellation or obliteration be disregarded. Ark. Stat. Ann. § 60-406 (Repl. 1971) provides that a will may be revoked by the testator, in whole or in part, by being canceled or obliterated with the intent and for the purpose of revoking the same. The probate judge held that there was an unrebutted presumption that the markings on the will were made by the testatrix; that the "strike outs" in paragraph one had the effect of increasing the estate, and for that reason, the attempted revocation was ineffective, because it would have resulted in a new testamentary disposition without attestation.

Present statutory authority for will revocation is found in Ark. Stat. Ann. § 60-406. It permits revocation of all or part of a will by cancellation or obliteration by the testator. At the outset, we should say that if that which is essential to the validity of the whole will is canceled or obliterated with the intention of revoking it, the whole will is revoked. *Starnes* v. *Andre,* 243 Ark. 712, 421 S.W. 2d 616. But if the marks made here were made by the testatrix, it seems clear to us that she had no intention of revoking the whole will, and the revocation must be held partial unless the attempted revocation would render the entire will invalid. We should then direct ourselves to the question whether the defacement of the will was done by the testatrix. The probate court held that there was an unrefuted presumption that the marks were made by the testatrix with the intent to revoke. We think the proper rule in this regard is stated in 95 C.J.S. 281, Wills § 385, as follows:

> Where a will is found among the effects of the testator, and when so found has been canceled, defaced, or obliterated in whole or in part, the prima facie presumption, in proceedings, for the probate of the will, is ordinarily that the cancellation, defacement, or obliteration was made by the testator or by his direction, and that it was done with the intention of revoking the will or the parts thereof canceled or obliterated.
>
> * * *
>
> Where only a paragraph or clause of will has been excised, the inference is that decedent attempted an alteration intending the remaining portions should constitute the will, and it may be admitted to probate, provided proof of the excised portion can be satisfactorily established. * * *
>
> The presumption of animus revocandi may be rebutted, either by direct evidence or by circumstances tending to a contrary conclusion. The burden is on the proponent of a will to overcome the presumption, as by showing that no revocation was intended, or that the will was unrevoked and in existence at the time of the testator's death, or

that if such spoliation had occured before death, the testator lacked knowledge thereof, or that if he mutilated the will himself, he lacked testamentary capacity at the time he did so. The proponent is not required, however, to prove whose name was obliterated or what words were obliterated.

Where a testator obliterates, deletes, or cancels a will, having a present intent to make a new will, as a substitute for the old, and the new will is not made, it is presumed that the testator preferred the old will to intestacy and effect will be given the old will.

This rule has been recognized in Arkansas if the acts of mutilation or obliteration are sufficient to constitute a revocation. *Cook* v. *Jeffett,* 169 Ark. 62, 272 S.W. 873. We cannot say that the indulging of this presumption (or perhaps more properly a strong factual inference) was improper.

Partial revocation by cancellation by running lines through certain words in a will has been upheld in Arkansas under a statute much like Ark. Stat. Ann. § 60-406, which prohibited revocation except by certain methods. *Cook* v. *Jeffett,* supra; *Jeffett* v. *Cook,* 175 Ark. 369, 299 S.W. 389. The change in language of the statute is not significant insofar as application in this respect is concerned.

In *Cook* v. *Jeffett,* we quoted, with approval, the following statement appearing at 28 R.C.L. 185:

Nevertheless the courts, in deciding whether a will must be reattested after the making of the erasures, draw a distinction between an erasure which merely indicates an intention to expunge a clause or portion of the will and one which gives a new meaning to the words not erased. In the latter, but not in the former, case a reattestation is required. The general rule therefore is that when an attempt has been made by interlineation or obliteration to make a different disposition of the estate, the attempt will be abortive if made without the attestation required by law,

and the will as originally drawn will be given effect.

We also held in the two *Jeffett* cases that where the whole or part of a will clause is crossed out (by lining out) there may be a revocation, even though the words crossed out remain legible. Furthermore, we said that when cancellation or obliteration of a clause or part of a clause does not affect the remainder of the will such cancellation or obliteration is effective as to such parts.

We are not particularly concerned with the obliterations in the paragraphs which related to an automobile and clothing, except as they may relate to determination of the intent of the testatrix as to the entire will, or as to the first paragraph. The beneficiaries of these bequests have not appealed. However, the action of the testatrix here is so nearly like that of Mrs. Jeffett in the Jeffett-Cook litigation that we must reach the same conclusion reached by the court there, i.e., that the manner of obliteration here is plainly indicative that a complete revocation such as was the case in *Starnes* v. *Andre*, 243 Ark. 712, 412 S.W. 2d 616, was not intended.

This brings us to a consideration of the effect of the attempted obliteration in the paragraph relating to the bequest of the real property. If this will is considered as an attested will, there can be no doubt that, under the rule approved in the *Jeffett* cases, the obliteration would not be effective without reattestation, because it gives a new meaning to the words not erased. That is, instead of appellant and her husband (now deceased) being devisees contingent upon the failure of appellee to survive the testatrix, they would become the outright beneficiaries of this bequest.

We are inclined to the position that the will should be considered for the purpose of this appeal as an attested will, even though its body is in the handwriting of the testatrix, and the will is properly signed by her. She seems to have been well informed as to the Arkansas requirements for attestation. If she had not intended that the will be so considered, she would not have gone to this trouble. While it is apparent from the drafts of typewritten instruments in the record which the

testatrix apparently signed but did not cause to be attested, that she intended to make a change in the will which was admitted by the probate court, she never made these wills effective.

On this state of the record, we affirm the judgment of the probate court.

JONES & BYRD, JJ., concur.

Appendix to opinion in *Walpole* v. *Lewis*, 5-6198

*July 3, 1961*

*My Last Will and Testament*

*I hereby bequeath to the following people:*

*(1) my house and ～～～～*

*～～～～～～～～～～*

*～～～～～～～～～～*

*～～～～～～～～～～*

*～～～～～ to Mrs. Margaret*

*～～～～～～～～～～*

*～～～～～～～～～～*

*～～～～～ to E.W. Walpole Sr. and wife Lewis who have been staunch friends many long years.*

*(2) The furnishing go with the house except the dinette suite, TV and end tables, china, lamps and pictures of the Lewis family — These things belong to the Glenn Lewis family — The ～～ table in the dinette belongs to Mrs. ～～ Lewis at Malvern ～～ the antique bedroom suite (dresser upstairs and Aunt Bettie Morrow ～～)*

*(3) Any monies (bonds and postal savings) will be given to ～～ your their care at my last days and ～～～ ～～ all debts are paid ～～～～ my funeral services ～～～ ～～ funeral home by insurance.*

*(over)*

This finality has been taken care of through the years.

If there is any trace of foul play or anything that may have caused my untimely death by those taking care of me, all remaining monies will go to Mt. Carmel Methodist Church.

Any and all clothes I may have will go to my neighbor Mrs. Elizabeth ~~~~

In case I should at the time have any dogs I ask that they be put to death mercifully.

I am a Methodist — born December 29 1891 at Bauxite, daughter of Franklin and Martha (Mattie) Moreland Harris.

Place my remains beside my brother in Old Wesley Cemetery, Bryant, Ark.

Witness ___ Mrs. Margaret Bright  Signed ___ Lovice Harris

Witness ___ Arthur F. Quigley

I wish Fred Briner to serve as administrator.

CONLEY BYRD, Justice, concurring. To me the result should be the same whether the document be considered as a holographic or an attested will. Ark. Stat. Ann. § 60-406 (Repl. 1971), with reference to revocation of a will provides:

"Except as provided in Section 23 [§ 60-407], a will, or any part thereof, can be revoked only

a. By subsequent will; or

b. By being burnt, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence and by his direction. If such act is done by any person other than the testator, the direction of the testator and the facts of such injury or destruction must be proved by two [2] witnesses who are not benefited by the revocation of the will. [Acts 1949, No. 140, § 22, p. 304.]

In *Cook* v. *Jeffett,* 169 Ark. 62, 272 S.W. 873 (1925), with reference to partial obliteration we pointed out that when an attempt has been made by interlineation or obliteration to make a different disposition of the estate, the attempt will be abortive if made without the requirements of the law for the making of a will and the will as originally drawn will be given effect.

While the obliteration here made was presumably made by the testatrix still the mere drawing of the lines does not qualify the obliteration as a holographic will. Ark. Stat. Ann. § 60-404 (Repl. 1971), provides:

"Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the evidence of at least three (3) credible disinterested witnesses to the handwriting and signature of the testator. . . ."

The lines drawn through the instrument involved have not been proved to be in the proper handwriting of the testator. Consequently, I would affirm even if the instrument should be considered a holographic will.

JONES, J., joins in this concurrence.