K. W. DODSON, Executor of the Estate
of Lora E. DODSON, Deceased, *v.* Fred WALTON

80-38                                    597 S.W. 2d 814
Supreme Court of Arkansas
Opinion delivered April 21, 1980

*Randall L. Gammill* and *James M. Thweatt,* for appellant.

*Moore & Serio,* for appellee.

DARRELL HICKMAN, Justice. This probate case comes to us purely on a question of law: the effect of an interlineation or obliteration of a devisee's name by the testator.

The Probate Court of Prairie County decided that the attempt in this case to obliterate the name of a devisee was abortive, and that according to our cases the devisee's name had to be restored to the will as originally intended.

The facts are not disputed. Lora E. Dodson died in October, 1977. Her attested typewritten will of October, 1975 was admitted to probate shortly after her death. It is attached

as an exhibit to this opinion. She gave all of her property in equal shares to six people; K. W. Dodson, Ruby Van Houten, Geneva Voumard, Fred Walton, Carl Slaughter, and Pauline Lease.

Fred Walton had farmed Mrs. Dodson's land for twelve years but was not related to her.

According to a stipulation by the parties, sometime after the will was made Mrs. Dodson struck through Walton's name. The probate judge found as a matter of fact she intended to do this and it was her purpose to exclude Walton from her will. However, the judge found that since the change was not properly executed as required by the cases of *Cook v. Jeffett,* 169 Ark. 62, 272 S.W. 873 (1925) and *Walpole v. Lewis,* 254 Ark. 89, 492 S.W. 2d 410 (1973), the attempt was void and Walton was entitled to one-sixth of the estate. The judge was right.

The appellant argues that the judge was wrong and cites Ark. Stat. Ann. § 60-406 as controlling[1] It reads in part:

. . . a will, *or any part thereof,* can be revoked only

a. By subsequent will; or

(b) By being burnt, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence and by his direction. If such act is done by any person other than the testator, the direction of the testator and the facts of such injury or destruction must be proved by two [2] witnesses who are not benefitted by the revocation of the will. [Emphasis added.]

The appellant emphasizes that the phrase "or any part thereof" means that Mrs. Dodson could have, and in fact did, lawfully change her will. We held in *Cook* and *Walpole* that if a testator obliterated or interlineated a will, *thereby changing the testamentary disposition,* it is invalid unless attested. (The dis-

---

[1] This statute was amended by Act 814 of 1979. The amendment was not enacted in time to have any bearing on this case.

sent in *Walpole* was regarding the majority's treatment of whether the same rule applies to a holographic will.)

It is undisputed the change was not attested and the obliteration changed the will, in effect making a new testamentary disposition. Instead of each devisee receiving one-sixth, the devisees, other than Walton, would receive one-fifth.

We have then a situation exactly like that dealt with in *Cook* and *Walpole.*

In *Cook* we said:

> . . . The rule supported by the weight of authority is, as is stated in the text of Ruling Case Law, *supra* that 'when an attempt has been made by interlineation or obliteration to make a *different disposition* of the estate, the attempt will be abortive if made without the attestation required by law, and the will as originally drawn will be given effect.' [Emphasis added.]

If the interlineation or obliteration does not change the testamentary disposition provided for in the will, then the change may be valid and the property devised goes by the law of intestacy. That was the case in *Cook* v. *Jeffett, supra,* where there was no residuary clause in the will.

In *Walpole,* the obliteration did make a different disposition of the property and the interlineation or obliteration was declared void.

In both *Cook* and *Walpole* we considered the same statutory language that appellant argues is controlling. In *Cook,* the statute in effect at that time, provides:

> No will in writing, except in cases hereinafter · mentioned, *nor any part thereof,* shall be revoked or altered otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation and alteration, and executed with the same formalities with which the will itself was required by law to be ex-

ecuted, or unless such will be burnt, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking the same by the testator himself, or by some other person, in his presence, by his direction and consent of the testator, or the fact of such destruction, shall be proved by at least two witnesses. [Emphasis added.]

In *Walpole* we had before us Ark. Stat. Ann. § 60-406 which replaced the statute considered in *Cook*. It can be readily seen that the statutes are essentially the same so far as the question before us is concerned.

Our interpretation of the law has been the same for at least 55 years and there are good reasons for our decisions in *Cook* and *Walpole*. Any other rule would permit anybody to obtain a will and strike through a name thereby defeating the intent of the testator. The books are full of cases where witnesses have declared after the death of someone, or attempted to declare, what the intent of the testator was.

Finding that the probate judge correctly applied the law to the facts in this case, we affirm the judgment.

Affirmed.

PURTLE and STROUD, JJ., dissent.

LAST WILL AND TESTAMENT
OF
LORA E. DODSON

I, Lora E. Dodson, of Route 1, DeValls Bluff, Prairie County, Arkansas, being over the age of twenty-one years and of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament, hereby revoking all wills heretofore made by me at any time.

(1) I direct that I be given suitable burial and that all my just debts be paid as speedily as possible.

(2) All the rest and residue of my estate, whether real, personal or mixed, after payment of my debts and burial expense, I give, bequeath and devise to my hereinafter named executor and direct that he liquidate all of my assets, both real and personal, and divide the proceeds therefrom among the following: K. W.

Dodson, Ruby VanHouten, Geneva Voumard, ~~Carl~~ Carl Slaughter, and Pauline Lease, share and share alike.

(3) I hereby nominate, constitute and appoint K. W. Dodson as executor of my estate under this my last will and testament and request that he be not required to make bond; however, should K. W. Dodson fail to qualify as executor for any reason, then I hereby nominate, constitute and appoint Carl-Slaughter as alternate executor of my estate and request that he be not required to make bond.

In Testimony Whereof, I have hereunto set my hand this 14th day of October, 1975, in the presence of Jno. B. Moore, Jr., and Robert G. Serio, who at my request attest the same in my presence.

_Lora E. Dodson_
Lora E. Dodson

We, Jno. B. Moore, Jr., and Robert G. Serio, do hereby certify that Lora E. Dodson, the testatrix in the above and foregoing last will and testament, subscribed the same in our presence, at the time declaring to us that said instrument was her last will and testament; and we, at her request, and in her presence, and in the presence of each other, now sign our names hereto as attesting witnesses.

FILED

NOV 1 1977

By _Clara B. Moody_ D.C.
BILLY M. GARTH
CIRCUIT AND COUNTY CLERK
PRAIRIE COUNTY

_Received in Will Book C page 586._

JOHN I. PURTLE, Justice, dissenting. The majority correctly stated the facts and law in this case; however, from that point on I am in disagreement with the opinion.

I think the first thing to look at is the applicable state law. In this case it is Ark. Stat. Ann. § 60-406 (Repl. 1971) which states in pertinent part as follows:

. . . a will, or any part thereof, can be revoked only

a. By subsequent will; or

b. By being . . . obliterated . . . with the intent and for the purpose of revoking the same, by the testator himself . . .

The plain, clear, unambiguous terms of the above statute allow a person to destroy a will or obliterate any part thereof. Since the statute has not been overruled as being contrary to the constitution and has not been repealed by the General Assembly, I am of the impression that it is still in force and effect and should be binding upon this Court.

I would further draw your attention to Ark. Stat. Ann. § 60-408 (Repl. 1971) which reads as follows:

No will or any part thereof which shall be revoked, or which shall be or become invalid, can be revived otherwise than by a reexecution thereof, or by the execution of another will in which the revoked or invalid will or part thereof is incorporated by reference.

The majority has obviously remade the will for the decedent in violation of the above statute. They have revived that part of the will which the decedent legally obliterated with the conscious and willful intent to strike Fred Walton from her will. Neither the trial court, the attorneys, nor a member of this Court doubt that the decedent herself changed this will with the specific intent of leaving Fred Walton out of the will.

I can understand the trial court's reluctance to uphold the testatrix's will due to our prior confusing opinions. Those opinions are Cook v. Jeffett, 169 Ark. 62, 272 S.W. 873 (1925); Jeffett v. Cook, 175 Ark. 369, 299 S.W. 389 (1927); and Walpole v. Lewis, 254 Ark. 89, 492 S.W. 2d 410 (1973).

In Cook, supra, two wills were presented for probate, and the matter was heard by a jury. The jury found the testatrix was incompetent at the time of the execution of the second will which had been executed in 1920. They found instead that the 1917 will was properly executed, and the jury admitted it to probate. On appeal the Supreme Court reversed

because the trial court had included an improper instruction to the jury. The error in the instruction was in allowing the jury to consider a guardianship appointment which had been improperly issued. The Supreme Court stated:

> The cause must, on account of the error in giving the instruction quoted above, be reversed and remanded for a new trial. If the will of 1920 is sustained, it constitutes a revocation of the former will, and that would end the controversy. In view, however, of another trial, it becomes necessary to discuss the effect of the alleged erasures in the will of 1917. . . .

Had the Supreme Court let well enough alone and simply sent the matter back for retrial, the present confusion probably would not have resulted.

In any event, the Court went on to quote from 28 R.C.L. 185 on the effect of obliteration of clauses in a will. The Court quoted with approval this statement from R.C.L.:

> But except where statutes are in force to which this construction has been or must be given, the obliteration of a will may be partial as well as total, and where any clause is by any means so obliterated that it can no longer be read, it is revoked, and the will must be admitted to probate without it. *** Obviously every erasure of an effective part of a will constitutes a change in the testamentary disposition. Nevertheless the courts, in deciding whether a will must be reattested after the making of the erasures draw a distinction between an erasure which merely indicates an intention to expunge a clause or portion of the will and one which gives a new meaning to the words not erased. In the latter, but not in the former, case a reattestation is required. . . .

With that type of confusing opinion, the case went back for trial in the circuit court, and lo and behold in *Jeffett,* supra, the jury found both the 1917 and the 1920 wills ineffecttive and that the decedent died intestate. The court had to resolve the matter at the time, and I believe the following

language might clarify what happened. At page 374, 175 Ark. 391, 392 of 299 S.W., the Court stated:

> Undoubtedly, as above indicated, a testator might revoke his whole will by marking out a material part thereof in such a way as to indicate that his purpose was to revoke the whole will, although it might leave it as legible as it was before. We do mean to say, however, that the manner of marking out or crossing out the clauses of the will in question, when we consider this clause in connection with the rest of the will, plainly shows that it was the intention of the testatrix only to revoke her will in so far as these two clauses were concerned, and this left the rest of the will as it was before. Under the facts as disclosed by the record, it was entitled to probate after the death of the testatrix, and the circuit court erred in submitting to the jury the question of whether the testatrix intended to revoke her whole will.

After reversing the trial court in the *Cook* and *Jeffett* cases, supra, this Court apparently realized that it was useless to send the case back again and so stated. The Supreme Court remanded the case back to the circuit court with directions to admit the will of July 17, 1917, to probate and to certify its judgment down to the probate court for further proceedings according to law not inconsistent with the opinion.

It appears to me that the Court was saying in *Cook*, supra, that in the absence of a statute requiring other interpretations, the quotation from R.C.L. would be applied. Even so, I do not find that the quotation from R.C.L. conflicts with Ark. Stat. Ann. § 60-604 (Repl. 1971). In any event, when *Jeffett,* supra, came along, it appears to me that the Court recognized its error and explained it away by saying that the will should be admitted to probate with the obliterated parts given the meaning as intended by the testatrix. Had the Court gone further in its quotation from 28 R.C.L. it would have found the following words:

When parts of a will have been effectively erased by a

testator they are no more a part of such will than if they had never been written therein.

I think it necessary to touch not too briefly on *Walpole,* supra, at this point. In that case the probate court had under consideration two typewritten wills, neither of which had been attested, and a holographic will which had a number of interlienations on it. The trial court found the typewritten wills were not valid and admitted the holographic will with the "strike outs." There were "strike outs" in paragraph 1 and 2.

The Court further held that the "strike outs" in paragraph 1 had the effect of increasing the estate; and for that reason, the attempted revocation was ineffective. The Court held that the "strike outs" in two paragraphs of the second page constituted a revocation of those paragraphs because they eliminated specific bequests, and there was no residuary clause. Thus, we have a situation where the Court restored some "strike outs," left others intact, and gave them the apparent meaning intended by the testator.

The opinion in *Walpole,* supra, pretty well reviewed the history of wills in probate in the state of Arkansas but finally got around to the actual effect of a partial revocation by obliteration or "strike outs." At page 97 of *Walpole,* 254 Ark., 415-16 of 492 S.W., we stated:

> . . . But if the marks made here were made by the testatrix, it seems clear to us that she had no intention of revoking the whole will, and the revocation must be held partial unless the attempted revocation would render the entire will invalid. **\*\*\*** Partial revocation by cancellation by running lines through certain words in a will has been upheld in Arkansas under a statute much like Ark. Stat. Ann. § 60-406, which prohibited revocation except by certain methods. *Cook* v. *Jeffett,* supra; *Jeffett* v. *Cook,* 175 Ark. 369, 299 S.W. 389. The change in language of the statute is not significant insofar as application in this respect is concerned. **\*\*\*** We also held in the two *Jeffett* cases that where the whole or part of a will clause is crossed out (by lining out) there may be a revocation, even though the words crossed out re-

main legible. Furthermore, we said that when cancellation or obliteration of a clause or part of a clause does not affect the remainder of the will such cancellation or obliteration is effective as to such parts.

Aside from the statement made at the beginning of this dissenting opinion that the statute is clear and unambiguous, it appears to me that the cases relied upon by the majority do not stand for the proposition for which they are quoted. This is true because the whole hypothesis of these cases arises from that portion of R.C.L. which indicated that, in the absence of statute, the meaning applied in those cases would be given effect.

I repeat that I do not find a conflict in the cases quoted and Ark. Stat. Ann. § 60-604 (Repl. 1971). It is undisputed that the testatrix intentionally obliterated this one party's name from her will. In such case the erasure is as effective in removing the erased words or phrases from a will as "if they had never existed." Even if these cases were construed to hold as the majority states, I believe they should be overruled insofar as they conflict with the statute above-quoted. I would reverse and remand with directions to probate the will as obliterated.

JOHN F. STROUD, Justice, dissenting. I respectfully dissent because I believe the majority has followed prior case law of this court irrespective of clear language of the controlling statute to the contrary. The applicable portion of Ark. Stat. Ann. § 60-406 (Repl. 1971) provides:

> . . . a will, *or any part thereof,* can be revoked only . . . by being . . . obliterated . . . with the intent and for the purpose of revoking the same, by the testator himself . . . (Emphasis added.)

The statute contains no language even suggesting that a partial revocation is valid only if it does not change the testamentary disposition, nor does Ark. Stat. Ann. § 60-408 (Repl. 1971) dealing with the revival of a partially revoked will. The cases cited in the majority opinion and reaffirmed by this case in effect hold that Ark. Stat. Ann. § 60-406 means

what it says only if the will contains no residuary clause or if the partial revocation only changes the executor or some other clause unrelated to a disposition of property. This interpretation virtually nullifies the right of partial revocation by obliteration because the vast majority of wills do properly contain a residuary clause.

The fact that this court has consistently interpreted this statute and its predecessor in this manner for 55 years does not make it right, nor does the worthy motive of preventing fraudulent obliterations following a testator's death. If, as in this case, proof to the court that the obliteration was intentionally made by the testator is not sufficient protection against fraud, then the statute should be amended by the General Assembly and not by this court. I would reverse the trial court.