In the Matter of the ESTATE OF Diana C. KRUEGER, also known as Diana Krueger, Christina Krueger, Christina Diane Kruger, Christina Diane Krueger, Diana A. C. Krueger and Diana Aneta Christine Krueger, Deceased.

William BIEBER, Rhinhold Bieber and Daniel Bieber, Petitioners and Appellees,

v.

Fred BIEBER, Personal Representative of the Estate of Diana C. Krueger, also known as Diana Krueger, Christina Krueger, Christina Diane Kruger, Christina Diane Krueger and Diana Aneta Christine Krueger, Respondent and Appellant.

Civ. No. 940091.

Supreme Court of North Dakota.

Feb. 28, 1995.

Malcolm H. Brown, Bismarck, for respondent and appellant.

Ronald S. Efta, Wibaux, Montana, and Michael J. Maus of Howe, Hardy, Galloway & Maus, Dickinson, for petitioners and appellees.

LEVINE, Justice.

Fred Bieber appeals from a county court judgment, entered in a formal testacy proceeding, denying probate of the purported holographic will of Diana C. Krueger.[1] We affirm.

Diana C. Krueger died on May 3, 1992. Her heirs are four nephews, Fred Bieber, William Bieber, Rhinhold Bieber, and Daniel Bieber. During her lifetime, Krueger executed two wills: a holographic will, executed on January 8, 1979, and a formally attested will, drafted by an attorney, and executed on March 9, 1990. The second will ("1990 will") contained a clause expressly revoking all previous wills, including the holographic will. The 1990 will was not located after Krueger's death.[2]

Following Krueger's death, Fred Bieber petitioned the county court for formal probate of the holographic will and for appointment as personal representative of Krueger's estate. His brothers, William, Rhinhold, and Daniel Bieber [collectively "William"] objected to the probate of the will. They contended, inter alia, that a material provision of the will had been altered by someone other than the testator, invalidating the will under NDCC § 30.1–08–03.[3] William also argued that Krueger did not reexecute the altered will and, once altered, it could not be revived.

The original holographic will contained a specific bequest of Krueger's "Books and Diploma" to her niece, Doris. However, at the time of probate, Doris's name had been crossed out and the phrase, "Fred Bieber daughters," inserted in its place. At the probate hearing, Fred testified that on March 14th or 15th of 1990, shortly after the execution of the 1990 will, he and his wife accompanied Krueger home from the hospital to Krueger's farm in Regent, North Dakota. After supper, Krueger asked him to retrieve a box from a dining room closet. As he and Krueger sat in her bedroom, Krueger took an envelope, containing the holographic will, out of the box and said, "Look, we still have our will." Then, Krueger read the contents of the two-page document to him "word for word." Fred testified that he could see cross-outs on the first page of the document. After she finished reading the will, Fred said

---

1. A formal intestacy order, as was entered by the county court in this case, is expressly "subject to appeal" and is "final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs." NDCC § 30.1–15–12. *See also, Matter of Estate of Stuckle,* 427 N.W.2d 96, 102 (N.D.1988) (Meschke, J., concurring) [subject to certain statutory exceptions, a formal order admitting or denying probate of a will is a final, appealable order].

2. William, Daniel, and Rhinhold introduced a copy of the 1990 will, retained by Krueger's attorney, to prove that it expressly revoked the holographic will. A copy of a revoking instrument is generally accepted as sufficient to establish that a prior will has been expressly revoked. *In re Estate of Lopes,* 152 Cal.App.3d 302, 199 Cal.Rptr. 425 (3 Dist.1984); 79 Am.Jur.2d Wills § 518.

3. Section 30.1–08–03, NDCC, sets out the requirements for a holographic will:

   "A will which does not comply with section 30.1–08–02 is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator."

that "Diane crossed [Doris's] name out" and, at Krueger's request, he wrote in its place, "Fred Bieber daughters," while Krueger held the document.[4]

The county court found that "[e]ven if Fred Bieber's testimony is true, the holographic will as altered no longer complies with § 30.1–08–03, NDCC. A material provision of the holographic will is not in the handwriting of the testator after the alteration." The county court also found that Krueger did not reexecute the altered holographic will and absent reexecution, the altered will could not be reviewed under NDCC § 30.1–08–09.[5] On appeal, Fred contends that the trial court erred in concluding that the bequest of Krueger's books and diploma to a specific legatee is a material provision of the holographic will and that the trial court's finding that Krueger did not reexecute her holographic will is clearly erroneous.

### I. Material Provision

The right to make a will disposing of one's property is statutory and unless a testator complies with the prescribed statutory formalities, the will is invalid. *In re Lyons' Estate*, 79 N.D. 595, 58 N.W.2d 845 (1953); *Montague v. Street*, 59 N.D. 618, 231 N.W. 728 (1930). Probate proceedings in North Dakota are governed by the Uniform Probate Code (UPC), codified at Title 30.1, NDCC. *See, e.g., Matter of Estate of Ketterling*, 515 N.W.2d 158 (N.D.1994).

A holographic will is valid if "the signature and the material provisions of the will are in the handwriting of the testator." NDCC § 30.1–08–03. Fred contends that his handwritten insertion, "Fred Bieber daughters," is not a material provision because of the insignificant value of the books and diploma in light of the total value of the estate. We cannot agree.

The interpretation and application of a statute is a question of law fully reviewable on appeal. *Olson v. N.D. Dept. of Transp. Director*, 523 N.W.2d 258 (N.D. 1994). Neither the UPC, nor the general provisions of the North Dakota Century Code, define the term "material provisions." We construe words undefined in the Code by attributing to them their "plain, ordinary, and commonly understood meaning." *Stewart v. Ryan*, 520 N.W.2d 39, 45 (N.D.1994). We construe uniform laws and model acts in the same manner as other jurisdictions to provide consistency and uniformity in the law. *Zuger v. N.D. Ins. Guaranty Ass'n*, 494 N.W.2d 135 (N.D.1992). Our consideration of other states' similar statutes and court decisions interpreting those statutes is relevant and appropriate. *J.P. Furlong Enterprises, Inc. v. Sun Exploration and Production Co.*, 423 N.W.2d 130 (N.D.1988).

Generally, "material" means "relevant," "consequential," or "having a certain or probable bearing ... on the effect of an instrument." *Webster's Third New Int'l Dictionary*, 1392 (1971). "Material provisions" are those portions of a holographic will which express the testamentary and donative intent of the testator. *Matter of Estate of Muder*, 156 Ariz. 326, 751 P.2d 986 (Ariz.App.1987). Specific bequests to particular legatees indicate testamentary intent and are uniformly held to be material provisions of holographic wills which must be in the handwriting of the testator. *Estate of Johnson*, 129 Ariz. 307, 630 P.2d 1039 (App.1981) [words are material if essential to the testamentary disposition]; *In Re Estate of Cunningham*, 198 N.J.Super. 484, 487 A.2d 777, 778–779 (L.1984) [describing the material provisions of the will as "instructions concerning the donation of [the testator's] bodily remains, specific bequests and the devise and bequest of the remainder

---

4. Doris, sister of Fred, William, Rhinhold and Daniel Bieber, predeceased Diana Krueger, and was dead at the time of the alteration.

5. North Dakota Century Code § 30.1–08–09(1) permits revival of a previously revoked will:
   "If a will which, had it remained effective at death, would have revoked a prior will in whole or in part, is thereafter revoked by acts under section 30.1–08–07, the prior will is

revoked in whole or in part unless it is evident from the circumstances of the revocation of the will or from testator's contemporary or subsequent declarations that he intended the prior will to take effect as executed."
Because we affirm on other grounds, we do not reach the issue of whether a revoked will, invalidated while it is revoked, can "take effect as executed" under the statute.

of [the] estate"]; *Matter of Estate of Fitzgerald,* 738 P.2d 236 (Utah App.1987) [admitting holographic will to probate because material provisions were in handwriting of testator]. The Drafters' Comments to UPC § 2–503, from which our holographic wills statute is derived, supports this interpretation:

"By requiring only the 'material provisions' to be in the testator's handwriting ..., a holographic will may be valid, even though immaterial parts such as date or introductory wording be printed or stamped. A valid holograph might even be executed on some printed will forms if the printed portion could be eliminated and the handwritten portion could evidence the testator's will." Comment UPC § 2–503. Uniform Probate Code Practice Manual 2d, v. 1 (1977).

We construe the material provisions requirement of NDCC § 30.1–08–03 to mean that those provisions which express donative and testamentary intent must be in the handwriting of the testator.[6]

■ The bequest of Krueger's books and diploma to Doris reflects Krueger's donative intent. Therefore, the alteration made by Fred resulted in a material provision of Krueger's will being in *his* handwriting and not in Krueger's. Insertion of the designation, "Fred Bieber daughters," as legatees is relevant and consequential, and it changes the effect of the instrument by altering the disposition of assets under the will. *Compare Bell v. Timmins,* 190 Va. 648, 58 S.E.2d 55 (1950) [deleting confusing language or inserting corrections in punctuation and spelling, although not done by the testator, did not alter the testamentary dispositions and hence were not material].

Fred cautions that a "strict construction" of NDCC § 30.1–08–03 would elevate form over substance and defeat Krueger's testamentary intent. He urges us to liberally construe the provisions of the UPC to effectuate that intent. While we adhere to the credo of liberal construction of a will, once it is admitted to probate, in order to effectuate the intent of the testator, *see Matter of Estate of Klein,* 434 N.W.2d 560 (N.D.1989), this case involves the threshold question of the validity of the will under an unambiguous statute.

■ The requirement under NDCC § 30.1–08–03, that the material provisions of a holographic will be in the testator's handwriting, is designed to ensure the authenticity of holographs, while still permitting lay persons to prepare their own wills without the expense and formality associated with attested wills. *See Matter of Estate of Erickson,* 806 P.2d 1186 (Utah 1991); *Estate of Black,* 30 Cal.3d 880, 181 Cal.Rptr. 222, 641 P.2d 754 (1982). Section 30.1–08–03, NDCC, provides a straightforward means of ensuring that a will is truly the testator's, recognizing the difficulty of forging an entire handwritten document. *Black,* 181 Cal.Rptr. 222, 641 P.2d 754. We share the county court's apprehension that:

"[i]f the holographic will in this case was admitted to probate with all of the crossouts and writing on it, a precedent would be set which could open the door to forged and fraudulent documents being admitted as a decedent's will."

We conclude that a material provision of the will was not in Krueger's handwriting, and the trial court did not err in denying probate of the invalid will.

## II. Reexecution

■ Fred also contends that the county court's finding that Krueger did not reexecute her holographic will is clearly erroneous. A finding is clearly erroneous when, although there is some evidence to support it, a re-

---

**6.** The "material provisions" requirement under our law is much the same standard as the "surplusage rule," applied in some states which require a holographic will be *entirely* in the testator's handwriting. *See, e.g., Estate of Phifer,* 152 Cal.App.3d 813, 200 Cal.Rptr. 319 (2 Dist.1984). Those jurisdictions have admitted documents to probate which contained printed or other writing not in the testator's handwriting, so long as the non-handwritten words were "not relevant to [the holograph's] substance or essential to its validity as a will or codicil." *Id.* 200 Cal.Rptr. at 321 (alteration in original; emphasis omitted). *See In re Estate of Teubert,* 171 W.Va. 226, 298 S.E.2d 456 (App.1982) [disregarding nonessential words of a holographic will is known as the "surplusage rule" which permits a court to probate testator's will even though, technically, the document is not entirely in the testator's handwriting].

viewing court is left with a definite and firm conviction that a mistake has been made. *Matter of Estate of Rohrich,* 496 N.W.2d 566 (N.D.1993). Fred bases his challenge on his "undisputed testimony" regarding Krueger's intent to revive her will.

■ In order to re-execute a will, the testator must execute the will, *again,* in accordance with the formalities prescribed under the statute. *See Ellerbeck v. Haws,* 1 Utah 2d 229, 265 P.2d 404 (1953); *Parker v. Mobley,* 264 Ark. 805, 577 S.W.2d 583 (1979); Page on Wills § 23.4 (1960). Under NDCC § 30.1–08–03, there is execution of a holographic will when the testator handwrites a document expressing testamentary intent and signs the writing. *See, e.g., Estate of Muder,* 751 P.2d 986.

■ Fred introduced no evidence indicating that Krueger rewrote the will or made any attempt to reexecute the document according to the statutory requisites. This is not a case in which Krueger herself authorized changes in her holographic will. If it were, we could treat the alteration as adopting the original date and signature of the instrument, thus reexecuting the will. *Estate of Archer,* 193 Cal.App.3d 238, 239 Cal. Rptr. 137 (2 Dist.1987); *Estate of Nielson,* 105 Cal.App.3d 796, 165 Cal.Rptr. 319 (4 Dist.1980); *In re Dumas' Estate,* 210 P.2d 697 (1949); *Hancock v. Krause,* 757 S.W.2d 117 (Tex.App.—Houston [1 Dist.] 1988); *Fenton v. Davis,* 187 Va. 463, 47 S.E.2d 372 (1948). Nor is this a case where alterations were made by a stranger, without the knowledge or consent of the testator. Courts generally disregard these unauthorized changes and probate the will as originally executed, to the extent the original writing is ascertainable. *Dodson v. Walton,* 268 Ark. 431, 597 S.W.2d 814 (1980); *Lowy v. Roberts,* 453 So.2d 886 (Fla.App. 3 Dist.1984); *Succession of Burke,* 365 So.2d 858 (La.App.1978).

■ Instead, Fred's "undisputed testimony" is that he made the alteration in Krueger's presence and at her request. In such a case, courts generally treat the alteration as reflective of the testator's intent and incorporate the changes into the body of the will. *Matter of Estate of Dobson,* 708 P.2d 422 (Wyo.1985). *See also In re Towle's Estate,* 14 Cal.2d 261, 93 P.2d 555 (1939). The effect is that a material provision of Krueger's will is no longer in her handwriting, as required under the statute, and the will is not entitled to probate. *Dobson,* 708 P.2d at 426; *Towle's Estate,* 93 P.2d 555. The county court's finding that Krueger did not reexecute her will is supported by the record and is not clearly erroneous.

We affirm.

Vande Walle, C.J., and Meschke, Neumann and Sandstrom, JJ., concur.